IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NORMAN BRADFORD )<br>Plaintiff, )<br>)<br>v. )<br>)<br>HSBC MORTGAGE CORPORATION, )<br>et. al., )<br>Defendants. ) | Case No. 1:09cv1226 |

F I L E D
SEP 20 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## ORDER

This matter is before the Court on three dispositive motions: (i) a motion to dismiss by defendant Professional Foreclosure Corporation of Virginia ("PFC"); (ii) a motion to dismiss by defendants HSBC Mortgage Corporation ("HSBC") and Mortgage Electronic Registration Systems, Inc. ("MERS"); and (iii) a motion for summary judgment[1] brought by HSBC and

---

[1] Although discovery has not yet concluded, the Federal Rules do not bar consideration of a motion for summary judgment at this early stage in the litigation. *See* Rules 12(d), 56, Fed. R. Civ. P.. Yet, it should be noted defendants HSBC and MERS and plaintiff Bradford have failed to follow the relevant Federal and Local Rules in their summary judgment briefs, and their failures were significant. First, HSBC/MERS's brief in support of summary judgment failed to include "a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." *See* Local Rule 56(B). In his opposition, Bradford similarly failed to "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Local Rule 56(B). Although Bradford does not address discovery in his brief, if he felt that further discovery were necessary to resolve the motion for summary judgment, he was required to "show[] by affidavit that, for specified reasons, [he] cannot present facts essential to justify [his]opposition." Rule 56(f), Fed. R. Civ. P. The Fourth Circuit "place[s] great weight on a Rule 56(f) affidavit, and [has] explained that a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Thompson v. CDL Partners LLC*, 2010 U.S. App. LEXIS 9925 (4th Cir. May 14, 2010). Having failed to provide such an affidavit, Bradford was required in his opposition to summary judgment to provide support in the record for each assertion, despite the lack of discovery. In this regard, only because Bradford's

MERS. Also pending is a motion by Daniel M. Gray and Richard B. Rogers to withdraw as counsel for plaintiff. The motions have been fully briefed and argued, and accordingly are now ripe for disposition.

## I.[2]

Plaintiff Norman Bradford is a Virginia resident living at a property located at 43543 Barley Court in Ashburn, Virginia (the "Ashburn Property"). Bradford named four corporate defendants and one individual defendant in his complaint.[3] Individual defendant Amir Mirza is a loan officer for defendant Home Advantage Funding Group ("Home Advantage").[4] Bradford worked with Mirza and Home Advantage to obtain a refinancing loan, which was secured by a deed of trust that named defendant HSBC Mortgage Corporation ("HSBC") as lender and defendant Mortgage Electronic Registration Systems ("MERS") as beneficiary. Defendant Professional Foreclosure Corporation of Virginia ("PFC") was later appointed substitute trustee pursuant to the Deed of Trust to begin foreclosure proceedings on Bradford's property. Defendant Mirza is a Virginia resident, and all four corporate defendants conduct business in Virginia.

This case arises out of the handling of Bradford's residential refinancing agreement on the Ashburn Property, Bradford's primary residence. In 2006, Bradford began communicating with Mirza about refinancing the Ashburn property. Bradford explained to Mirza that he had

---

complaint was a verified complaint has he provided some factual basis, albeit limited, for the many of the critical assertions in his opposition to summary judgment.

[2] The facts recited herein are derived from the pleadings and the record taken as a whole, and are not materially disputed.

[3] All references to the "complaint" are to plaintiff's amended complaint unless otherwise stated.

[4] Because Bradford does not clearly allege the residency or general function of each defendant, the defendants are identified by their alleged role in the underlying acts.

already put $10,000 in escrow to purchase a second property in Ocean City (the "Ocean City property"), and that he intended to use the cash-out from the Ashburn refinancing to complete the Ocean City property's down payment. He specifically noted that if he were unable to complete the down payment, he would lose the $10,000 in escrow.

After outlining his circumstances to Mirza, Bradford laid out various features he wished to see in the refinancing deal, such as cash-out refinancing and no prepayment penalty. Mirza promised Bradford that his loan would incorporate these features. Additionally, Mirza promised that the loan would be a fixed-rate, low-interest loan with lower monthly payments that Bradford's existing loan, and that Bradford would not be charged points on the loan.

Closing occurred on September 20, 2006. According to Bradford, he was not provided a "net sheet" or any other preliminary documents describing the loan before the closing date. He further alleges that he was not provided a proper notice of cancellation, a "Truth in Lending" statement, or a good faith estimate.

The terms of the loan were memorialized in a promissory note, which in turn was secured by a Deed of Trust on the Ashburn property. Bradford alleges that he was given only a few minutes on the day of closing to review and sign the documents. The actual loan terms departed markedly from the terms Bradford desired. Specifically, the documents indicated that (i) Bradford would be charged points for origination, (ii) the loan was a sub-prime loan with an adjustable interest rate and a three-year prepayment penalty, and (iii) Bradford's monthly payments would actually be higher than those of Bradford's prior home loan. Because he had $10,000 in escrow already for the Ocean City property, Bradford states that he had "no practical choice" other than signing the documents. Am. Compl. ¶ 27.

3

Bradford made monthly payments on this loan to HSBC until September 2008. On September 27, 2008, Bradford mailed HSBC a twenty-page qualified written request ("QWR") pursuant to RESPA in which he demanded a complete investigation of his mortgage and copies of all records associated with the loan and loan payments. Bradford provided no basis for believing his account to be in error other than "all the news lately regarding the stories of predatory lending" and Bradford's "feeling that there is something you are trying to hide." QWR at 1. On October 16, 2008, Bradford mailed a letter to HSBC demanding rescission of the loan. HSBC responded to the QWR in a letter dated November 21, 2008, at which time HSBC refused to recognize Bradford's right to rescission. Thereafter, Bradford ceased making loan payments.

In the spring of 2009, HSBC declared Bradford in default and advised him that PFC had been appointed substitute trustee pursuant to the Deed of Trust to begin foreclosure proceedings on the Ashburn property. On June 2, 2009, Bradford sent a letter to PFC's counsel demanding verification of the mortgage debt, and PFC responded on June 30, 209, contending that the debt was valid. PFC then proceeded with foreclosure proceedings. On the same day, PFC also notified Bradford that the debt had been sold to GMAC Bank. Foreclosure has been halted for reasons not relevant to the present motions.

Bradford subsequently brought this suit alleging violations the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, as well as breach of fiduciary duty and fraud.

## II.

Dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., is appropriate where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 570 (2007)). It follows that to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. And, in this respect, it is also true that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal* conclusions." *Id.* (emphasis added). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id., quoted in Walker v. Prince George's County, Md.*, No. 08-1462, 2009 WL 2343614, at *5 (4th Cir. July 30, 2009) (O'Connor, J.). Instead, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought. Accordingly, the motions to dismiss must be granted if the complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to relief.

As to the summary judgment standard, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

### III.

Plaintiff's complaint contains eight separate claims that can be grouped into five categories: (a) two claims under TILA seeking rescission and damages for HSBC's failure to honor rescission of the loan (Counts I-II); (b) a claim for damages under the FDCPA (Count III);

5

(c) three claims for damages under RESPA (Counts IV-VI); (d) a claim for breach of fiduciary duty (Count VII); and (e) a fraud claim (Count VIII). Each of these categories of claims is separately addressed herein.

### A.     TILA Claims

In Counts I and II, Bradford alleges that HSBC violated TILA by failing to provide certain material disclosures required under the Act at the time the refinancing was consummated. Consequently, Bradford seeks rescission of the loan and damages for the TILA violations.

Congress passed TILA "to assure the meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). The Act requires a creditor to disclose information at the time the loan is consummated, and it affords certain rights to rescission and damages for violations of these rules. *See* §§ 1631-1632, 1635, 1637-1640; *see also Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54 (2004).

With regard to rescission, TILA provides:

> [I]n the case of any consumer credit transaction . . . , the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a); *see also* 12 C.F.R. § 226.23 ("Regulation Z") ("If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation . . . ."). The statute defines "material disclosures" to mean

6

> the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

15 U.S.C. § 1602(u). Taken together, these clauses provide the borrower on a consumer credit transaction the right to rescind the loan agreement within three years of closing if the creditor failed to make the required disclosures under the Act at the time the transaction was consummated.

Bradford has satisfied the elements of a claim for rescission and damages under TILA. As prerequisites, Bradford has alleged both that HSBC is a "creditor" and that the loan was a "consumer credit transaction" within the meaning of the operative TILA provisions. Am. Compl. ¶ 51, 61; *see also* 15 U.S.C. § 1602 (definitions). As to the disclosures, Bradford alleges that HSBC (i) failed to provide the "required disclosures" prior to consummation of the transaction; (ii) failed to make the disclosures conspicuously and in writing; (iii) failed to deliver timely notices required by TILA; (iv) included terms in the transaction that were prohibited by TILA; and (v) failed to disclose proper financial charge details and the annual percentage interest rate. Am. Compl. ¶ 64. Bradford then sent a letter by certified mail to HSBC on October 16, 2008, stating, "Pursuant to the Federal Truth in Lending Act, . . . I hereby exercise my right to rescind the mortgage transaction." Am. Compl. Ex. E. HSBC refused to recognize the rescission or to return the property. *See* 15 U.S.C. § 1635(b) (requiring rescission of the loan and return of the property where the right to rescission is properly exercised by the debtor).

While further discovery might ultimately yield evidence sufficient to refute these claims, Bradford's verified complaint is sufficient to support a claim for rescission under TILA. Bradford has stated that material disclosures were not made in accordance with the Act, which

7

would allow him three years from the September 10, 2006, closing date to provide notice of rescission. His October 16, 2008, notice of rescission was sufficiently detailed under the statute, and the complaint fully satisfies the additional elements of the TILA claims.[5]

Defendants HSBC and MERS argue that the complaint fails to allege that Bradford had the ability to tender the borrowed sum in accordance with his rescission. Based on the statute's requirement that the borrower tender the borrowed funds within twenty days of rescinding a loan under § 1635(b), courts have recognized that rescission need not be ordered where it is clear that the plaintiff lacks the ability to satisfy this obligation. *See, e.g., Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003). Even if a plaintiff were required to allege the ability to tender as an element of a rescission claim under TILA, Bradford's pleading would be sufficient. Bradford's letter to HSBC, attached to the complaint as Exhibit E, advised that he was "prepared to discuss a tender obligation" and requested information as to the "exact amount needed for tender." The complaint also explicitly alleges that Bradford may be able to tender the funds of the outstanding debt. Am. Compl. ¶¶ 67-69. Accordingly, the motion to dismiss, or in the alternative for summary judgment, are denied as to Counts I and II. This ruling is without prejudice to HSBC and MERS to file a subsequent motion for summary judgment at the appropriate time should circumstances warrant and subject to Rule 11, Fed. R. Civ. P.

**B.    FDCPA Claim**

In Count III, Bradford alleges that HSBC, MERS, and PFC violated various provisions of the FDCPA by (i) attempting to collect on a properly rescinded mortgage loan, (ii) making false

---

[5] HSBC and MERS also argue that the TILA claims are deficient because GMAC currently serves as holder of Bradford's note and, therefore, is a necessary and indispensable party to any rescission claim. While discovery might yield facts to support this argument, a genuine dispute currently exists as to whether the indorsement of the note was proper and effective. As such, the argument is unavailing.

8

or incomplete reports to credit reporting agencies, (iii) attempting to foreclose on a void security interest, and (iv) attempting to foreclose on a note of which they were not in possession and under which they were no longer entitled to payment. Am. Compl. ¶ 86.

The FDCPA imposes civil liability on any "debt collector" who engages in certain prohibited debt collection practices. *See* 15 U.S.C. § 1692k(c); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010). As a preliminary matter, therefore, a plaintiff bringing a claim under the FDCPA must show that the defendant is a "debt collector," which is defined by the Act to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Critically under this definition, merely collecting a debt on behalf of one's self does not give rise to classification as a "debt collector." *Id.*

As to the prohibited practices under the Act, debt collectors may be liable for false or misleading representations in connection with debt collection, such as making "a threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e. The Act also prohibits certain unfair practices, such as "threatening to take any nonjudicial action to effect dispossession . . . if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." § 1692f.

Bradford has alleged that defendants HSBC, MERS, and PFC are "debt collectors" within the meaning of the statute because they "regularly engage in the collection of debts in the ordinary course of their business, both on their own behalf and on behalf of others." Am. Compl. ¶¶ 84. Bradford has also alleged that the defendants use the U.S. mails, telephone, or the

9

internet in furtherance of their wrongful acts. *Id.* ¶ 85. As to the wrongful acts under the statute, Bradford's allegation that the defendants attempted to foreclose on the basis of a security interest they knew to be rescinded would fall within the gambit of the FDCPA. In their motion for summary judgment, HSBC and MERS do not cite any facts in the record to counter these allegations. As such, Bradford's sworn statements in his verified complaint are sufficient to plead the FDCPA claims and to create a genuine issue of fact with regard to those claims. Therefore, Count III survives defendants' motions. As with the decision on Counts I and II, this ruling is without prejudice to HSBC and MERS to file a subsequent motion for summary judgment at the appropriate time should circumstances warrant and subject to Rule 11, Fed. R. Civ. P.

C.   **RESPA Claims**

Counts IV-VI of the complaint allege RESPA violations by defendants HSBC, Home Advantage, and Mirza. RESPA was enacted to protect homebuyers during the settlement process. *Marks v. Cook*, 347 Fed. Appx. 915 (4th Cir. 2009). Among other duties, the statute requires servicers of federally related mortgage loans to review and respond to any "qualified written request" ("QWR") of a borrower for information relating to that servicing. 12 U.S.C. § 2605(e). For the purposes of the statute, a QWR is

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 5605(e)(1)(B). RESPA also provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage

10

loan other than for services actually performed." 12 U.S.C. § 2607(b). As a preliminary matter, Bradford has properly alleged that the loan is a "federally related mortgage loan" within the meaning of RESPA. Am. Compl. ¶¶ 96, 106.

### 1. Failure to Respond to the QWR

In Count IV, Bradford alleges that HSBC violated RESPA by failing to provide a proper written explanation in response to Bradford's QWR within the time limits allotted by law. The statute requires that in response to a QWR, a servicer must issue the requested corrections or otherwise provide an explanatory response within 60 days of receipt of the request, excluding weekends and holidays. 12 U.S.C. § 2605(e)(2).

Bradford alleges that he submitted a proper QWR to HSBC by certified mail on September 27, 2008. That document, provided as an exhibit to the complaint, is conspicuously labeled a QWR, and after identifying the mortgage account in question, the document requests an extensive array of information about the mortgage account for verification purposes. Am. Compl. Ex. C. Bradford alleges that HSBC's response on November 21, 2008, was incomplete and thus HSBC fell short of its statutory obligations. Am. Compl. ¶¶ 90, 92 & Ex. D.

Defendants HSBC and MERS argue that the QWR was invalid because it failed to "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error" in accordance with § 2605(e)(1)(B)(ii). Defendants' citation, however, is incomplete. Section 2605(e)(1)(B)(ii) clearly requires that the QWR provide *either* the reasons described above "*or* . . . sufficient detail to the servicer regarding *other information* sought by the borrower." *Id.* (emphasis added). Because the statute offers two methods of drafting a valid QWR, and does so in the disjunctive, a QWR would not be invalid where, as here, it cites broad, nonspecific concerns as to the accuracy of the account but goes on to request specific

11

documentation of the account's terms. *See Rodeback v. Utah Fin.*, 2010 U.S. Dist. LEXIS 69821, at *7 (D. Utah July 13, 2010) ("Defendants argue that . . . the QWR was not proper under the statute because it did not identify any servicing error. But the statute does not require such an allegation."); *Falcocchia v. Saxon Mortg.*, 2010 U.S. Dist. LEXIS 80373, at *5 (D. Cal. 2010) (RESPA claim survived a motion to dismiss where the complaint alleged a QWR seeking "the principal balance owed, the calculated monthly payment, calculated escrow payment, and any fees claimed to be owed to the defendants").

Nevertheless, Bradford's § 2605(e) claim fails for the independent reason that Bradford has not adequately alleged damages. Bradford seeks statutory and actual damages on his § 2605 claim. Am. Compl. ¶ 94. Statutory damages are permissible on such a claim where the plaintiff demonstrates a "pattern or practice of noncompliance" with RESPA. 12 U.S.C. § 2605(f)(1). Bradford has not alleged any such facts, so he has no basis for statutory damages. As to actual damages, courts in this circuit and elsewhere have consistently read § 2605 as requiring a showing of pecuniary damages to state a claim.[6] *See Bishop v. Quicken Loans, Inc.*, 2010 U.S. Dist. LEXIS 93692 (S.D. W. Va. Sept. 8, 2010); *Padgett v. Onewest Bank, FSB*, 2010 U.S. Dist. LEXIS 38293 (N.D. W. Va. Apr. 19, 2010); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006); *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 946 (N.D. Ill. 2005); *Claxton v. Orlans Assocs., P.C.*, 2010 U.S. Dist. LEXIS 88028, at *12 ( E.D. Mich. Aug. 26, 2010); *Copeland v. Lehman Bros. Bank, FSB*, 2010 U.S. Dist. LEXIS 73032, at *8-9 (S.D. Cal. July 15, 2010) (collecting cases from the Ninth Circuit); *Cortez v. Keystone Bank*, 2000 U.S. Dist. LEXIS 5705, at *40 (E.D. Pa. May 2, 2000). The conclusory assertion that plaintiff is

---

[6] Although such a pleading requirement is not expressly discussed in the statute, § 2605(f) allows for recovery of "actual damages to the borrower as a result of the failure" to respond to the QWR, indicating that a plaintiff must plead a plausible connection between the failure and damages to survive scrutiny under *Iqbal*. 129 S. Ct. 1937, 1949.

entitled to "actual damages," Am. Compl. ¶ 94, is insufficient to show a plausible claim for actual damages arising from HSBC's failure to respond adequately to the QWR. Accordingly, Count IV must be dismissed with leave to amend should there be a good faith basis to do so under Rule 11, Fed. R. Civ. P.

### 2. Remaining RESPA Violations

Bradford also alleges RESPA violations against Home Advantage and Mirza (Count V) and against HSBC (Count VI) based on allegations of kickbacks and fee sharing. In passing RESPA, Congress intended to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2). In effectuating this purpose, § 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Similarly, § 2607(b) prohibits the "splitting" of charges "for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Violations can trigger both civil and criminal liability. *Id.* § 2607(d).

Bradford alleges that the "activities of [d]efendants Home Advantage and Mirza in connection with [Bradford's] loan transaction are settlement services with the meaning of RESPA." Am. Compl. ¶¶ 97, 107. Bradford then alleges that after paying fees to Home Advantage for settlement services, fees and kickbacks were improperly distributed among Home Advantage, Mirza, and HSBC. Am. Compl. ¶¶ 99-100, 109. While it is unclear at this stage what underlying facts have provided Bradford with his good faith basis on which he asserts these

13

allegations, *see* Rule 11, Fed. R. Civ. P, the allegations must be accepted as true for the purposes of the motion to dismiss.[7]

Nevertheless, these claims must be dismissed because they are barred by the applicable statute of limitations. Civil actions brought for violations of § 2607 must be brought within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. Although he does not specify dates on which the violations took place, Bradford pled that he was "not aware of the RESPA violations until September 2008." Am. Compl. ¶ 103. Without question then, by the time Bradford filed his original complaint on October 29, 2009, the statute of limitations had elapsed.[8] Accordingly, Counts V and VI must be dismissed.

### D. Breach of Fiduciary Duty Claim

In Count VII, Bradford alleges that PFC breached its fiduciary duty to Bradford. PFC argues that it had no fiduciary duty to Bradford, and thus this claim should be dismissed for failure to state a plausible claim for relief. Under Virginia law, "[a] trustee under a deed of trust is a fiduciary for both debtor and creditor and must act impartially between them." *Smith v. Credico Industrial Loan Co.*, 362 S.E.2d 735, 736 (Va. 1987). Bradford alleges that PFC violated this duty by attempting to foreclose on the property despite notice that the security interest underlying the foreclosure had been rescinded. Am. Compl. ¶¶ 113-16. In its motion to dismiss, PFC alleges facts that, if true, might demonstrate that it did not breach its duty to act

---

[7] Since the motion for summary judgment does not assert that there is no genuine dispute of material fact with respect to these claims, there is no need to consider whether summary judgment would be appropriate on the basis of the existing record.

[8] Bradford argues that the statute of limitations should be equitably tolled such that his lawsuit was timely filed. Am. Compl. ¶ 103. Even if the doctrine of equitable tolling were applicable to RESPA claims, it would not save Bradford. At best, under a theory of equitable tolling, the one-year statute of limitations would begin to run in September 2008 when Bradford learned of the violations, and as such, the limitations period would still expire before his October 29, 2009, filing.

impartially,[9] but PFC's own assertions are not relevant to its motion to dismiss. While this claim may fail later on summary judgment, Bradford has pled a plausible claim for relief. As such, the motion to dismiss Count VII must be denied.

### E. Fraud Claim

In Bradford's final count, he alleges that HSBC, Home Advantage, and Mirza engaged in fraud. Am. Compl. Count VIII. It is well settled in Virginia that two elements are essential to a fraud claim: (i) a knowing misrepresentation or concealment of material fact, and (ii) reasonable and detrimental reliance on that misrepresentation or concealment. *See Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984); *Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207 (Va. 1956).

Bradford alleges that Home Advantage and Mirza knew the details of Bradford's loans for both the Ashburn property and the Ocean City property, and that they knew, based on conversations between Bradford and Mirza, precisely the terms Bradford desired for his refinancing. Bradford also told Mirza that he needed a cash-out that would allow him to finance the down payment on the Ocean City property, or else he would lose the $10,000 he had already put in escrow. The two men discussed other loan terms Bradford desired as well, such as a fixed interest rate, the lack of a prepayment penalty, and monthly payments less than those of his existing home loan. Am. Compl. ¶¶ 15-22. The actual loan incorporated none of these features. Bradford claims he was fraudulently induced to sign the documents because defendants "concealed negative details . . . to put [Bradford] in an impossible situation if he wanted to complete the transaction on the Ocean City Property." Am. Compl. ¶ 123.

---

[9] For example, PFC alleges that it contracted counsel for HSBC and discovered that Bradford's claim for rescission was invalid.

These allegations are insufficient to support the element of reasonable reliance required for a fraud claim. Bradford was presented with the documents for his review and assent. By signing the documents, he accepted the loan terms as given, not the terms as discussed in preliminary conversations with Mirza. Whatever representations were made prior to the signing of the documents were belied by the documents themselves, and it is unreasonable for a person to rely on prior conversations when presented with the documents in full for review. *See Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920) ("[W]hen a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations."). The fact that Bradford was under financial or temporal pressure to complete the transaction is no excuse for failing to read the documents fully, particularly in a transaction as significant as a home loan. Accordingly, the motions to dismiss must be granted with respect to Count VIII.

### IV.

Accordingly, and for good cause,

It is hereby **ORDERED** that the motions by HSBC and MERS to dismiss (Doc. No. 40) or to grant summary judgment (Doc. No. 43) and the motion by defendant PFC to dismiss (Doc. No. 37) are **GRANTED IN PART** insofar as Counts IV, V, VI, and VIII of plaintiff's Amended Complaint are **DISMISSED** with respect to HSBC, MERS, and PFC, and the motions are **DENIED IN ALL OTHER RESPECTS**. The denial of the motion for summary judgment by HSBC and MERS (Doc. No. 43) is **WITHOUT PREJUDICE** to the movants' right to submit a subsequent motion for summary judgment at the appropriate time should circumstances warrant.

17

It is further **ORDERED** that the motion to withdraw by plaintiff's counsel is **GRANTED**. Accordingly, plaintiff Bradford shall have new counsel file an appearance in this matter no later than 5:00 p.m., Monday, October 11, 2010, or else proceed *pro se*.

It is further **ORDERED** that plaintiff is **GRANTED LEAVE** to file an amended complaint to amend Count IV to remedy the deficiency of that Count with respect to damages, provided plaintiff is able to do so consistent with Rule 11, Fed. R. Civ. P. Such amended complaint shall be filed no later than 5:00 p.m., Monday, October 18, 2010.

The clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
September 20, 2010

_____
T. S. Ellis, III
United States District Judge