## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| NORMAN BRADFORD<br><br>  Plaintiff<br>v.<br><br>HSBC MORTGAGE CORPORATION *et al.*<br><br>  Defendants | No. 1:09-cv-01226-TSE-JFA |

### PLAINTIFF'S MEMORANDUM ADDRESSING THE FDCPA CLAIM

Pursuant to the Court's July 22, 2011 order, Plaintiff Norman Bradford ("Bradford") hereby submits the instant memorandum and factual contentions as to the parties' previously filed motions for summary judgment (Doc. Nos. 88, 91, 190), limited to the pending FDCPA claim.

### RELEVANT FACTS NOT GENUINELY IN DISPUTE

On September 20, 2006, Bradford entered into a residential mortgage re-finance transaction with Defendant HSBC.  *See* Third V. Am. Comp. ¶ 25.  In the course of this transaction, Bradford executed a promissory note ("Note"), Doc. No. 30-2, and a deed of trust ("DOT"), Doc. No. 30-1.

On or about November 10, 2006, HSBC sold the loan to Residential Funding Company, LLC ("RFC").  *See* Doc. No. 176-2 at 4, 22 (HSBC's sworn responses to P's Interrogs.); *id.* at 23 (MERS Milestone Report); **Exhibit A** (Bradford Sixth Decl.).[1]

---

[1] On the other hand, according to Ally, HSBC sold the loan to it and not to RFC on November 9, 2006.  **Exhibit I**.  Ally then allegedly sold the loan to RFC on December 30, 2009

Some time in 2009, presumably prior to around May 4, 2009 (see below), Shapiro and Burson LLP ("S&B"), acting with respect to Bradford's loan as counsel for alleged substitute trustee Profession Foreclosure Corporation of Virginia ("PFCVA") and in an effort to collect on the loan by foreclosure, prepared a document purporting to assign any interest of MERS in the DOT to Defendant Ally Bank (f/k/a GMAC Bank). **Exhibit B**. The document was executed by MERS with the signature notarized, but with the date of the signature and notarization left blank. *Id.*

On or about May 4, 2009, Bradford received a letter from S&B threatening foreclosure. **Exhibit C**. The letter failed to specify on whose behalf and for whose benefit said foreclosure would be conducted. *Id.*

On May 11, 2009, the original Note was apparently transmitted from "RFC's custodian" to HSBC and then to S&B as counsel for PFCVA. Doc. No. 176-2 at 4.

On May 22, 2009, Defendants Ally and RFC executed a document styled as a deed of appointment of substitute trustee, alleging that Ally (GMAC) Bank was the noteholder and purporting to appoint PFCVA as Substitute Trustee with respect to Bradford's loan. **Exhibit D**. The document was executed in California. *Id.*

On or about June 30, 2009, Bradford received a letter from S&B claiming that Ally (GMAC) Bank was the noteholder and informing Bradford that Ally had appointed PFCVA as

---

to RFC. *Id.*  Neither HSBC nor Ally appear to know what happened with the loan subsequent to its origination, since their claims in this regard (submitted as responses to Bradford's interrogatories) are not based on personal knowledge, *id.*; Doc. No. 176-2, and thus do not constitute admissible evidence, Fed. R. Civ. P. 56 .

Substitute Trustee.  **Exhibit E**.  Enclosed with the letter was a copy of the Note that contained an endorsement in favor of Ally (GMAC) Bank.[2]  *Id.*

On September 11, 2009, notwithstanding the MERS assignment described *supra* as Exhibit B, MERS purported to assign its interest in the DOT to Defendant HSBC.  **Exhibit F**.

On September 17, 2009, notwithstanding the May 22, 2009 document, HSBC executed another document styled as a deed of appointment of substitute trustee, alleging that it (HSBC) was the noteholder and purporting to appoint PFCVA as Substitute Trustee.  **Exhibit G**.  The document was executed in Florida.  *Id.*

On or about October 6, 2009, Bradford received another letter from S&B threatening foreclosure, this time claiming that HSBC was the noteholder (in contrast to the June 30, 2009 letter claiming Ally/GMAC Bank as the noteholder).  **Exhibit H**.

On October 29, 2009, Bradford filed the instant action seeking judicial enforcement of his October 16, 2008 rescission of the loan and claiming FDCPA and other violations.  Doc. No. 1.

On or about January 26, 2011, Bradford examined the original Note in the office of PFCVA's counsel and found it to be substantially identical to the copy he received from S&B with S&B's June 30, 2009 letter almost two years earlier.  **Exhibit A**.

---

[2] To date, HSBC and MERS have failed to answer some of Plaintiff's interrogatories, as detailed in his Motion for Contempt and Sanctions, Doc. Nos. 176, 198.  Therefore, it remains unknown to whom HSBC, as servicer, was disbursing Bradford's loan payments during the relevant times, as well as when and under what circumstances the Note came to bear an endorsement in favor of Ally/GMAC Bank and whether is genuine and is otherwise valid.  *See* Doc. No. 198.  The decision on that motion, which includes a request to compel the answers, remains pending as of this writing.

## ARGUMENT

1. **<u>Summary Judgment Standard.</u>**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also*, *e.g.*, *Alexandria Div. Ralph Henry v. Stansberry*, No. 1:10cv1358 (E.D. Va. July 27, 2011). The moving party must demonstrate that no genuine issues of material fact are present for resolution. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. *See*, *e.g.*, *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, district courts consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

2. **<u>Each Defendant violated FDCPA by (1) taking a collection action that could not legally be taken; (2) using deceptive means to collect; and (3) taking nonjudicial action without present right to possession of collateral.</u>**

The FDCPA was enacted to protect consumers from debt collector's abusive debt collection practices and to ensure that non-abusive debt collectors would not be competitively disadvantaged. Morgan v. Credit Adjustment Board, 999 F.Supp. 803, 806 (E.D. Va.1998). The elements of an FDCPA claim are: "(1) the plaintiff has been the object of collection activity

arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Dikun v. Streich*, 369 F.Supp.2d 781 (E.D. Va., 2005) (quoting *Fuller v. Becker & Poliakoff*, 192 F.Supp.2d 1361 (M.D. Fla.2002)).

With respect to prohibited conduct, the FDCPA provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
. . .
(9) The use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Moreover, 15 U.S.C. § 1692f provides as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest;

*Id.*  In the case at bar, Defendants HSBC, Ally/GMAC Bank, and RFC violated the above provisions of FDCPA.

In particular, HSBC violated FDCPA when, in September 2009, it assigned the DOT to itself through MERS, **Exh. F**, and purported to appoint PFCVA as Substitute Trustee, **Exh. G**, causing PFCVA (through its counsel S&B) to threaten Bradford with foreclosure on behalf of HSBC, **Exh. H**.  At the time of these attempts to collect on the subject debt, HSBC was not and

could not have been the noteholder because (1) the Note was specially endorsed in favor of Ally/GMAC (*see* **Exh. E**) and (2) the Note had been transferred by HSBC to RFC in November 2006 and was never transferred back to HSBC (*see* Doc. No. 176-2 at 4, 22, 23).

Moreover, to the extent that HSBC acted on behalf of Ally/GMAC or RFC, those entities violated FDCPA by using another's name (without disclosing their own) in an effort to collect a debt. 15 U.S.C. § 1692a(6) (the Act covers "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts"); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997) (finding that the defendant violated the FDCPA by using names other than its own to collect on the debt).

Ally and RFC also violated FDCPA when, in May 2009, they appointed PFCVA as Substitute Trustee on behalf of Ally/GMAC as the noteholder and caused PFCVA to threaten Bradford with foreclosure on behalf of Ally/GMAC. See **Exh. B, C, D, E**. Neither Ally nor RFC was the noteholder at the time, or at least a genuine issue of fact exists as to either party's status as such, *see* nn.1&2, *supra*.

Lastly, each Defendant is liable to Bradford under FDCPA to the extent that such Defendant acquired the subject loan after Bradford stopped making payments in the fall of 2008. *See*, *e.g.*, *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709 (E.D. Va. 2003); 15 U.S.C. § 1692a(4). In light of Defendants' contradictory representations, this issue that cannot be resolved on the current record in this case.

Respectfully submitted,

    */s/ Gregory Bryl*
Gregory Bryl, Esq.
VSB# 45225
1629 K Street NW, Suite 300
Washington, DC 20006
202-360-4950
703-997-5925 fax
help@bryllaw.com
*Attorney for Plaintiff*

-8-

## CERTIFICATE OF SERVICE

I certify that on August 5, 2011, I caused a copy of the foregoing document, with exhibits, if any, to be sent via the Court's CM/ECF and/or U.S. mail to the following:

Robert Ryan Michael
Bierman Geesing & Ward LLC (Richmond)
8100 Three Chopt Rd
Room 240
Richmond, VA 23229-4833

Robert Ryland Musick
William Woodul Tunner
Thompson McMullan PC
100 Shockoe Slip, 3rd Fl
Richmond, VA 23219-4140

> */s/ Gregory Bryl*
> Gregory Bryl, Esq.