IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

DEC - 8 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| NORMAN BRADFORD | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09cv1226 |
| | ) | |
| HSBC MORTGAGE CORPORATION, | ) | |
| ALLY BANK, and RESIDENTIAL | ) | |
| FUNDING COMPANY, LLC, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This dispute between a borrower and several mortgage lenders is yet another case in the

flood of litigation spawned by the collapse of the housing market.  At issue here on summary

judgment is whether any of the remaining lenders is a "debt collector" under the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA").  Also at issue is whether the

borrower's claims pursuant to the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), are

time-barred or otherwise fail as a matter of law.  For the reasons that follow:

(1) Defendants HSBC Mortgage Corporation ("HSBC") and Ally Bank ("Ally") are
entitled to summary judgment on the FDCPA claim because neither is a debt collector;

(2) Defendant Residential Funding Company, LLC ("RFC") is entitled to summary
judgment on the FDCPA claim because the undisputed material facts show that it did not
violate the statute;

(3) Defendant Ally is entitled to summary judgment on the TILA claim because the
undisputed material facts show that it did not violate the statute; but,

(4) Defendants HSBC and RFC are not entitled to summary judgment on the TILA
claims because those claims are neither time-barred nor fail as a matter of law.

## I.

### A. The Parties

Over its long history, this action has involved only a single plaintiff but a large number of defendants. Plaintiff Norman Bradford ("Bradford") is a Virginia resident living at 43543 Barley Court in Ashburn, Virginia (the "Ashburn loan"). Six corporate defendants and one individual defendant have been parties to this action at some point, namely, (i) HSBC, (ii) Ally, (iii) RFC, (vi) Professional Foreclosure Corporation of Virginia ("PFCVA"), (v) Home Advantage Funding Group ("Home Advantage"), (vi) Mortgage Electronic Registration Systems ("MERS"), and (vii) Amir Mirza.[1]  Mirza was a loan officer for Home Advantage.  Bradford worked with Mirza and Home Advantage to obtain a refinancing loan (the "Ashburn loan"), which was secured by a deed of trust that named HSBC as the lender and MERS as the beneficiary with the power to enforce the deed.  On March 4, 2011, Bradford moved to join Ally as a defendant, believing Ally was the holder of Bradford's promissory note and thus a necessary and indispensable party.  That motion was granted on March 11, 2011.  *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. Mar. 11, 2011) (Order).  Subsequently, HSBC submitted an affidavit from an employee of Ally representing that, in fact, RFC was the true holder of Bradford's promissory note, and accordingly, Bradford was granted leave to join RFC as a defendant.[2]  *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. May 25, 2011) (Order).

Of the seven defendants that have at one point been named as parties in this action, only three now remain, namely, HSBC, Ally, and RFC.  PFCVA was originally a defendant on

---

[1] In his initial complaint, Bradford also named twenty Does.  Bradford's Amended Verified Complaint did not name or otherwise include these unidentified individuals.

[2] Ally was actually named as a defendant on Bradford's original complaint, but because Ally was not named on Bradford's Amended Verified Complaint filed on August 5, 2010, Ally was terminated as a party at that time.

Bradford's initial Verified Complaint, but Bradford's claims against PFCVA were voluntarily dismissed on January 26, 2011. *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. Jan. 26, 2011) (Consent Order). Mirza has not been served nor has he entered an appearance in this case. Home Advantage was served, but because it did not file a responsive pleading, default was entered against it. *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. Sept. 21, 2010) (Entry of Default); Rule 55(a), Fed. R. Civ. P. (authorizing the clerk to enter default against any party that fails to plead or otherwise to defend a claim). By Order dated July 22, 2011, MERS was dismissed as a party. *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. July 22, 2011) (Order). The remaining defendants are HSBC, Ally, and RFC; Bradford continues to be the sole plaintiff.

B. Undisputed Facts

With one exception, *see* Subpart I.C, the undisputed facts can be briefly summarized.[3] Bradford sought to refinance an existing loan on his Ashburn home so that he could purchase a beach house in Ocean City, Maryland. He successfully obtained refinancing from HSBC, which loaned Bradford $571,000 in exchange for Bradford's promise to pay that principal amount in monthly installments, with an interest rate of 6.25%, over a thirty-year period. Bradford executed a promissory note to this effect on September 20, 2006 (the "Note"). HSBC was the original loan provider and the original noteholder. Contemporaneous with the Note's execution, Bradford also executed a deed of trust encumbering the Ashburn home (the "Deed of Trust") to secure payment of the Note. At all times, HSBC retained servicing rights and remained Bradford's primary point of contact on the Note. But ownership of the Note and the Deed of Trust changed on several occasions in the years that followed the closing of the Note. Unaware

---

[3] This recitation supplements the factual summary in *Bradford v. HSBC Mortg. Corp.*, --- F. Supp. 2d ---, 2011 WL 3047490 (E.D. Va. July 22, 2011).

of any of these changes, Bradford addressed all payments on the Note to HSBC, which processed and disbursed those payments to the noteholder.

Bradford ceased making payments on the Note in October 2008 and has made no payments since then. Although foreclosure efforts commenced at various times, defendants voluntarily discontinued all such efforts—ostensibly because of the instant litigation. Thus, Bradford, who has made no payments on the Note since October 2008, has been living in the Ashburn home for over three years without having made a single payment during that time.

On May 4, 2009, the law firm Shapiro & Burson, LLP ("S&B") sent a letter to Bradford on PFCVA's behalf. The letter stated that the Note was in default, raised the possibility of foreclosure on the Ashburn home, and also mentioned several options available to Bradford to avoid foreclosure. This letter did not disclose the identity of the Note's owner. Bradford responded to S&B's letter on June 2, 2009 and therein disputed whether the Note was in default and requested various documents, including the Note itself. On June 30, 2009, S&B sent a letter to Bradford that enclosed the payment history of the Ashburn loan and a copy of the original Note, which bore an endorsement to Ally. The letter also notified Bradford that the foreclosure sale that had been scheduled for July 7, 2009 was cancelled per the lender's instructions. S&B sent another letter to Bradford on October 6, 2009, that appears to be identical to the original May 4 letter in all but one respect, namely the October 6 letter identified HSBC as "the creditor."

C. Disputed Facts

Resolution of the pending summary-judgment motions requires determining whether a genuine issue of material fact exists as to the chain of ownership of the Note. The parties agree that HSBC was the holder and the original obligee of the Note at the time the Note was executed in September 2006. The parties also agree that RFC currently owns the Note. What the parties

dispute is the chain of the Note's ownership. Bradford contends that the ownership chain proceeded quite simply as follows: HSBC sold the loan directly to RFC in November 2006.[4] Defendants' account of the loan's ownership involves more links in the chain. Defendants contend that HSBC sold the Note to Ally, not RFC, in November 2006 and continued to possess rights to service the loan as a sub-servicer thereafter. Defendants further contend that Ally sold the Note to RFC in December 2009.

The record evidence establishes that, as a matter of undisputed material fact, defendants' account is correct. The Note includes a notarized endorsement from "HSBC Mortgage Corporation (USA)" to "GMAC Bank" (now known as Ally Bank).[5] Note at 7 (Doc. 218-2). Michael Goeller, the Director of Mortgage Acquisitions at Ally, testified by affidavit that "Ally Bank . . . purchased the Note from HSBC on or about November 9, 2006 for the sum of $575,131.95." Goeller Aff. ¶ 4 (Doc. 218-2).[6] Nor is this the end of the chain; the Note also contains an allonge that, "For Purposes of Further Endorsement" of the Note, "is affixed and becomes a Permanent Part of said Note." Note at 9 (Doc. 218-2). This allonge purports to

---

[4] *See* Bradford FDCPA Mem. 1 ("On or about November 10, 2006, HSBC sold the loan to Residential Funding Company, LLC ('RFC')."); Bradford Mem. in Opp'n to Ally & RFC Summ. J. Mot. 3 ("Based on the totality of the record to date, it appears that HSBC's and MERS' representations that the Note was sold to RFC in November 2006 are accurate[.]").

[5] Bradford baldly asserts that this endorsement was "likely slapped onto the Note some time in 2009, when Bradford was subjected to Defendants' multiple collection efforts[.]" Bradford Br. in Opp'n to Ally & RFC Mot. for Summ. J. 8. Because this assertion is purely speculative and supported by no record evidence, it cannot create a genuine issue of material fact as to the Ashburn loan's ownership history. *See Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985).

[6] Goeller relied, *inter alia,* upon a Commitment Letter that RFC sent to Ally on November 9, 2006, in which RFC "confirm[ed] the details of the transfer of certain Mortgage Loans from HSBC Mortgage Corporation ('Seller') to [Ally] Bank[.]" Ltr. from Ally to HSBC (Nov. 9, 2006) (Doc. 245-1). An attachment to this letter (upon which Goeller also relied) indicates that the Ashburn loan was included among the mortgages that HSBC sold to Ally at the time (*see* Doc. 245-6).

endorse the Note from "Ally Bank fka GMAC Bank" to "Residential Funding Company LLC."
*Id.* In Goeller's affidavit, he avers that "[o]n or about December 30, 2009, Ally Bank . . . sold
the Note to Residential Funding Company, LLC for $234,393.22." Goeller Aff. ¶ 7. In addition
to relying upon the Note and the allonge, Goeller also relied on documentation of "the sale
transaction" from Ally to RFC. *Id.* ¶ 2. Specifically, these documents include a series of
executed notices, each purporting to transfer ownership of a group of mortgage loans that
includes this Note.[7] (Docs. 245-2, 245-3, 245-4, 245-5).[8]

Bradford's effort to dispute this substantial evidence fails to create a genuine issue of
material fact as to the ownership chain of the Note. First, Bradford points to the MERS report
indicating that a transfer of "flow servicing rights" and "beneficial rights" to RFC took place in
November 2006 (Doc. 176-2 at 22). But "beneficial rights" clearly refers to the right to enforce
the Deed of Trust, not the Note.[9] Second, Bradford notes that HSBC initially averred that it had
sold the Note to RFC in November 2006. *See* HSBC Interrog. Responses 4 (Doc. 176-2). But

---

[7] These documents also include a master purchase agreement and schedule of mortgages that all
of the transfer notices reference (Docs. 245-8 & 245-9). The schedule contains the Note, as
evidenced by the unpaid balance of $571,000 (the original amount of the Note) and RFC's
internal loan account number that matches that of the allonge and of the payment history report.

[8] Bradford's account requires inferring that Ally never had ownership of the Ashburn loan.
Further weighing against this inference is the fact that on or about June 30, 2009, the law firm
S&B, acting on behalf of debt collector PFCVA, sent a letter to Bradford informing him that
Ally was the current holder of the Note. Shannon Decl. ¶ 9 (Doc. 222-1).

[9] *See, e.g.*, Transfer of Beneficial Rights Overview, https://www.mersonline.org/mers/WebHelp
/tob/transfer_of_beneficial_rights_overview.htm (last visited Dec. 6, 2011) ("A beneficial rights
transfer is the transfer of the security interest under the mortgage or deed of trust to a new
investor."). Indeed, the MERS report and other record evidence make clear that, consistent with
defendants' account, HSBC transferred master servicing rights to RFC and retained for itself
rights as a sub-servicer of the Ashburn loan. *See* MERS Milestone Report (Doc. 176-2 at 22)
(classifying RFC as "New Servicer" and HSBC as "Old Servicer" and "New Subservicer"). The
November 9, 2006 commitment letter from RFC to Ally confirms these rights transfers (Doc.
245-1).

HSBC concedes that this representation "was an error" as suggested by "all available evidence[.]" HSBC Summ. J. Br. 2 & n.1. Bradford cites no authority—and none has been found—stating that a party's change of position with respect to a material fact creates a triable issue on that fact. Third, Bradford contends that the allonge never effected a valid transfer of the Note, which Ally never physically possessed. Bradford's argument fails because "[o]wnership rights in instruments are determined by principles of the law of property independent of" the law governing negotiable instruments. 22 Richard A. Lord, *Williston on Contracts* § 60:27 (4th ed.).[10] RFC acquired *ownership* of the Note through the master purchase agreement and the series of executed notices that ultimately gave it title to the Note. Thus, none of these three contentions raises a genuine issue of material fact as to the chain of the Note's ownership.

Finally, the statement that an HSBC representative named "Susan" made to Bradford over the telephone[11] is inadmissible hearsay and therefore "cannot be considered on a motion for summary judgment." *Maryland Highways Contractors Ass'n v. State of Md.*, 933 F.2d 1246,

---

[10] In other words, under the Virginia Commercial Code, ownership of an interest such as the subject Note does "not depend upon whether the instrument was transferred under Section 3-203." Va. Code § 8.3A-203 cmt. 1. Indeed, the Virginia Commercial Code appears to have contemplated the very transaction that occurred here, wherein a seller transfers ownership of an instrument to a buyer without actually transferring the right to enforce that instrument:

> For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y.

Va. Code § 8.3A-203 cmt. 1. *See also* Lord, *supra*, § 60:27.

[11] Bradford has submitted a declaration describing a telephone conversation he had with an HSBC representative identified only as "Susan," who, according to Bradford, told him that "HSBC transferred the [Ashburn] loan to Residential Funding Company in November of 2006." 6th Bradford Decl. ¶ 12 (Doc. 213-1).

1251 (4th Cir. 1991). This statement suffers from a fatal first-level hearsay problem given that Bradford cannot identify who "Susan" was[12] and thus cannot establish that her statement was a party-opponent admission. *See* Rule 801(d)(2), Fed. R. Evid. (excluding from the hearsay rule a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed"); *Greensboro Professional Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). Moreover, the HSBC representative's statement suffers from a fatal second-level hearsay problem in that Bradford cannot establish that the declarant's statement was based on personal knowledge rather than inadmissible hearsay. Bradford fails to articulate what gave "Susan" personal knowledge that the Note was sold to RFC in November 2006.[13] Thus, the representative's statement amounts to nothing more than parroting of inadmissible hearsay. *See Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998), *cited in Davis v. Nationwide Mut. Fire Ins. Co.*, --- F. Supp. 2d. ---, 2011 WL 4072512, at *7 n.13 (E.D. Va. Sept. 9, 2011).[14] In light of these evidentiary defects, the HSBC representative's statement fails to create a genuine issue of material fact with respect to the Note's ownership chain.

---

[12] Bradford's declaration does not indicate what telephone number he called or what basis he had for believing that it would connect him with an HSBC representative. "Susan" gave Bradford neither her last name nor her job title.

[13] Although HSBC's internal computerized records might be considered records of regularly conducted activity pursuant to Rule 803(6), Fed. R. Evid., the foundation necessary to satisfy the elements of this exception to the hearsay rule is utterly lacking here. *See L'Etoile v. New England Finish Sys.*, 575 F. Supp. 2d 331, 337–38 (D.N.H. 2008) (excluding double hearsay where proffering party "made no effort to identify" the original declarants and the statements therefore suffered a "foundational shortcoming"); *Evans v. Port Authority of N.Y. & N.J.*, 192 F. Supp. 2d 247, 264–65 & n.129 (S.D.N.Y. 2002) (citing cases).

[14] *See also Lupo v. Voinovich*, 235 F. Supp. 2d 782, 793 (S.D. Ohio 2002).

To summarize, for purposes of deciding defendants' motions for summary judgment, the undisputed material facts establish both that HSBC sold the Note to Ally in November 2006, and that Ally sold the same loan to RFC in December 2009.

D. The Instant Motions

The July 22, 2011 Memorandum Opinion described the procedural history up to that date.[15]  Certain subsequent events merit mention here.  The Memorandum Opinion dismissed Bradford's TILA rescission claims with prejudice and converted defendants' motions to dismiss Bradford's FDCPA claim into motions for summary judgment.  Two days after the Memorandum Opinion issued, Bradford sought leave to file an amended complaint that included, *inter alia*, two new claims pursuant to TILA.  Following oral argument, an Order issued granting Bradford leave to file a fourth amended complaint "containing the existing FDCPA claim . . . and the new claims under 15 U.S.C. §§ 1641(f)(2)&(g)[.]"  *Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. Sept. 16, 2011) (Order).  This Order directed defendants HSBC, Ally, and RFC to submit motions to dismiss the new TILA claims and indicated that "[t]hese motions will be converted to motions for summary judgment under Rule 12(d), Fed. R. Civ. P., if they present matters outside the pleadings."  *Id.*

Now at issue are defendants' motions for summary judgment on Bradford's FDCPA claims and defendants' motions to dismiss Bradford's two new TILA claims.

## II.

Summary judgment is appropriate where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The question on summary judgment is "whether a

---

[15] *Bradford v. HSBC Mortg. Corp.*, --- F. Supp. 2d ---, 2011 WL 3047490 (E.D. Va. July 22, 2011).

reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant[.]" *In re Apex Express*, 190 F.3d 624, 633 (4th Cir. 1999). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

## III.

To survive summary judgment on his FDCPA claim, Bradford must adduce legally admissible evidence that (i) he was a "consumer" targeted for debt-collection activity, (ii) each defendant engaged in the collection activity as a "debt collector," and (iii) each defendant engaged in an act or omission that the FDCPA prohibits. *See Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 805 (E.D. Va. 1998). Defendants' summary-judgment motions rest primarily on their contention that, as a matter of law and based on the undisputed material facts, none of them is a "debt collector" and therefore that Bradford has failed to put evidence into the record that, if believed, would satisfy this element of his FDCPA claim.

Bradford has failed to make any evidentiary showing that HSBC, Ally, or RFC meets the definition of "debt collector" that 15 U.S.C. § 1692a(6) puts forth. The FDCPA "generally appl[ies] only to debt collectors." *Scott v. Wells Fargo Home Mortg.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003). The statute defines a "debt collector" as:

> [A]ny person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10

15 U.S.C. § 1692a(6). Bradford's complaint alleges that because these "[d]efendants regularly engage in the collection of debts in the ordinary course of their business," they are rightly considered debt collectors. 4th Verif. Amend. Compl. ¶ 84. Despite this allegation, the summary-judgment record discloses no evidence that any of these defendants "regularly collects or attempts to collect . . . debts owed or due . . . another." 15 U.S.C. § 1692a(6). Bare allegations of the complaint or of counsel in briefs and argument do not raise a genuine issue of material fact as to whether any of these defendants is a "debt collector." *See Rountree v. Fairfax Cnty. Sch. Bd.*, 933 F.2d 219, 223 (4th Cir. 1991); *Skeeter v. City of Norfolk*, 681 F. Supp. 1149, 1153–54 (E.D. Va. 1987). For the purpose of deciding the summary-judgment motions, none of the defendants falls within the definition of "debt collector" that § 1692a(6) provides.

Moreover, Ally is not a "debt collector" because it falls within the so-called creditor exemption of the FDCPA, under which the statutory definition of "debt collector" generally excludes creditors. *See* 15 U.S.C. §§ 1692a(6)(A)&(F). The FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Because Ally has only ever been a person "to whom a debt is owed" with respect to the Note, it follows that absent one of several narrow exceptions inapplicable here, Ally cannot be a debt collector with respect to the Note. *See FTC v. Check Investors*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive.").[16] Any involvement Ally

---

[16] In this respect, because "mortgagors[] and mortgage servicing companies" tend to be creditors, they generally "are not debt collectors and are statutorily exempt from liability under the FDCPA." *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 648 (E.D. Va. 2010) (quoting *Scott*, 326 F. Supp. 2d at 717). Similarly, a bank generally "is not a debt collector for the purposes of the FDCPA;" it does not incur liability under the FDCPA "when collecting on [its] accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (citation omitted). *Accord*

might have had in sending debt-collection communications to Bradford is immaterial because a creditor cannot incur vicarious liability for FDCPA violations by an independent debt collector that acts on the creditor's behalf. *See Washington v. CitiMortgage, Inc.*, No. 3:10cv887, 2011 WL 1871228, at *13 (E.D. Va. May 16, 2011) (citing cases).[17]  Because Ally is a creditor and therefore exempt from the statute's definition of "debt collector," Ally is entitled to summary judgment on the FDCPA claim.

Whether either HSBC or RFC is a "debt collector" under the FDCPA deserves closer scrutiny. Bradford argues that because HSBC and RFC each falls into a different exception to the creditor exclusion, each of these defendants can still be considered a "debt collector" under the FDCPA even if neither satisfies § 1692a(6)'s definition of "debt collector." With respect to HSBC, Bradford contends that HSBC should nonetheless be considered a "debt collector" inasmuch as HSBC falls under the "false name" exception to the creditor exclusion.[18]  This argument fails because the exception clearly does not apply to HSBC. With respect to RFC, Bradford contends that RFC is a "debt collector" inasmuch as RFC acquired the Note after the loan had gone into default. Irrespective of whether RFC is a "debt collector" for this reason, it

---

*Eley v. Evans*, 476 F. Supp. 2d 531, 533–34 (E.D. Va. 2007) (deputy sheriffs, car dealership, and towing company not debt collectors).

[17] *See also Pettit v. Retrieval Masters Creditor Bureau*, 211 F.3d 1057, 1059–60 (7th Cir. 2000) ("Individuals who do not otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act."); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–07 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the [FDCPA], for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act[.]"); *Williams v. Countrywide Home Loans*, 504 F. Supp. 2d 176, 190–91 (S.D. Tex. 2007) ("[V]icarious liability has not been extended to lenders in the context of FDCPA claims.").

[18] Bradford contends that HSBC should also be considered outside the creditor exemption, or at the least a genuine issue exists as to this fact, insofar as it received the Note solely for the purpose of collecting on behalf of either RFC or Ally. This argument is easily rejected because HSBC never received the Note back after transferring it to Ally. Bradford mistakenly relies upon HSBC's transfer of the Deed of Trust, not the Note.

cannot be liable for FDCPA violations because there is no evidence that RFC was involved in any debt-collection communications related to the Ashburn loan.

HSBC plainly falls outside the false name exception. Although the fact that HSBC was the original obligor of the Note would otherwise exempt HSBC from the definition of "debt collector," the FDCPA provides that the term "debt collector" "includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). By enacting this provision, Congress intended to forbid the practice of "flat-rating," wherein a creditor "attempt[s] to intimidate debtors by creating the false impression that a third party is participating in the debt-collection process." *Chiang v. Verizon New England*, 595 F.3d 26, 41– 42 (1st Cir. 2010). This exception does not apply, however, where "the third party is participating in the debt collection, for then there is no deception." *White v. Goodman*, 200 F.3d 1016, 1017 (7th Cir. 2000).[19] Precisely this occurred here. HSBC never gave any false impression that a third party was attempting to collect on the defaulted Note. Bradford's loan actually was turned over to PFCVA, a debt collector, which in turn sent debt-collection communications to Bradford. Thus, the false name exception to the creditor exclusion clearly does not apply, and HSBC must be considered a creditor under the FDCPA.[20] Accordingly, as a creditor, HSBC is entitled to summary judgment on the FDCPA claim.

---

[19] *Compare Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002).

[20] Bradford also suggests that Ally and RFC might fall within the false name exception. *See, e.g.*, Bradford FDCPA Mem. 6 (arguing that "*to the extent that* HSBC acted on behalf of Ally/GMAC or RFC, those entities violated FDCPA by using another's name (without disclosing their own) in an effort to collect a debt") (emphasis added). This argument fails for the same reason that it fails with respect to HSBC, namely, that a third-party debt collector was actually involved in debt collection and therefore that no deception from any defendant occurred.

With respect to RFC, it is unnecessary to reach or decide whether it falls into any exception to the creditor exclusion because the undisputed material facts demonstrate that RFC engaged in no activity that could have violated the FDCPA.[21]  Specifically, the record reveals no communications made by RFC to Bradford that would be subject to the FDCPA's strictures.  The only debt-collection communications that this record contains originated from S&B, which was acting on behalf of PFCVA.[22]  Bradford has adduced no evidence that S&B and PFCVA were acting at RFC's direction when S&B sent debt-collection letters to Bradford.  Indeed, the only evidence of any defendant's involvement in those letters indicates that S&B and PFCVA acted at

---

[21] It is true that the statutory definition of "creditor" specifically excludes a person who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).  The mirror-image of this exception to the creditor exclusion is the statutory definition of "debt collector," which excludes "any person collecting or attempting to collect any debt" if the collection activity "concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F).

As a matter of logic and statutory structure, acquiring a debt that was in default at the time simply makes a defendant ineligible for this particular exclusion from the definition of "debt collector;" it does not follow from this ineligibility that the defendant satisfies the definition of "debt collector" that § 1692a(6) puts forth or cannot be considered a "creditor" pursuant to. § 1692a(4).  By logical operation of the FDCPA's plain language, only if a defendant receives a defaulted debt for the purpose of collecting that debt for someone else is that defendant not a creditor and therefore necessarily considered a "debt collector." *See McKinney v. Cadleway Properties*, 548 F.3d 496, 505–06 (7th Cir. 2008) (Manion, J., concurring).  Puzzlingly, the majority of courts that have addressed the issue have held that a defendant who acquires a debt that was in default at the time of transfer is *necessarily* a debt collector, rather than simply ineligible for this particular exclusion from the "debt collector" definition, even if it attempts to collect on the defaulted debt for itself alone.  *Zirogiannis v. Dreambuilder Investments*, --- F. Supp. 2d ---, 2011 WL 1743243, at **5–6 (E.D.N.Y. May 7, 2011) (citing cases).  In any event, the issue need not be decided here because the record discloses no evidence that RFC acted in contravention of the FDCPA.

[22] Bradford's bare allegation that S&B threatened foreclosure at the direction of RFC finds no support in this record.  Although the Fourth Verified Amended Complaint alleges that RFC acted as a debt collector when it assigned the Deed of Trust to PFCVA and directed PFCVA to threaten foreclosure in May 2009, the record contains no evidence RFC gave this or any other direction to PFCVA.

the direction of HSBC, not RFC.[23]  Bradford has therefore failed to raise a genuine issue of

material fact with respect to whether RFC communicated with Bradford in violation of the

FDCPA.  Accordingly, RFC is entitled to summary judgment on Bradford's FDCPA claim.

## IV.

Although Bradford's original TILA rescission claim was dismissed, the Fourth Verified

Amended Complaint contains two new claims, each pursuant to a different TILA subsection.

First, Bradford alleges that HSBC—the original lender and current sub-servicer of the loan—

violated 15 U.S.C. § 1641(f)(2) when it failed to provide an effective response to the letter he

had sent to HSBC requesting the identity and contact information of the Note's owner as of

September and October 2008.  Second, Bradford alleges that Ally and RFC violated § 1641(g)

when the Note was transferred to each of those defendants and each failed to give Bradford the

requisite notice of the transfer within 30 days.  Defendants have moved to dismiss these claims

pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Because the parties have submitted matters outside the

pleadings that are nonetheless appropriately considered, defendants' motions to dismiss

Bradford's new TILA claims are converted to motions for summary judgment pursuant to Rule

12(d), Fed. R. Civ. P.[24]

---

[23] *See* Shannon Decl. ¶¶ 6–10.

[24] This record contains volumes of pertinent material outside the pleadings, including
interrogatory responses and other documents that were neither attached nor integral to the
complaint. *See Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Phillips
v. LCI Int'l*, 190 F.3d 609, 618 (4th Cir. 1999)).  Moreover, "[i]t is well-settled that district courts
may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment,"
which allows district courts "to assess whether genuine issues of material fact do indeed exist."
*Bosiger v. US Airways*, 510 F.3d 442, 450 (4th Cir. 2007) (citing 5C Charles Alan Wright &
Arthur R. Miller, *Federal Practice & Procedure* § 1366, at 159–65 & n.17 (3d ed. 2004)).
*Accord George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980).  Because the lengthy discovery
period and briefing schedule have given the parties "a reasonable opportunity to present all the

With respect to Bradford's §1641(f)(2) claim— asserted only against HSBC—HSBC contends that the claim is untimely.[25] Section 1641(f)(2) provides that:

> Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

The record evidence establishes that on November 21, 2008, HSBC sent a response to Bradford's September 23, 2008 request for the contact information of the Note's owner and that this response did not contain such information.[26] It plainly appears that this claim relates back to the date on which Bradford filed his original action—October 29, 2009—pursuant to Rule 15(c)(1)(B), Fed. R. Civ. P.[27] Thus, the question presented is whether this date was "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Significantly,

---

material that is pertinent to the motion," it is therefore appropriate to treat defendants' motions to dismiss the TILA claims as motions for summary judgment thereon. Rule 12(d), Fed. R. Civ. P.

[25] In support of its motion to dismiss, HSBC argued that the record that existed at that time contained no evidence that HSBC failed to respond to a request about the Ashburn loan specifically. Bradford subsequently supplemented the record with his request and HSBC's response, both of which specifically reference the Ashburn loan.

[26] Specifically, Bradford has adduced evidence that by letter dated September 23, 2008, Bradford requested that HSBC tell him whether there has "been any assignment of my monetary interest/asset to any other party," whether there has "been any assignment of the deed of trust or mortgage and note to any other party," and "the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments." (Doc. 243-1, at 18–19.) Bradford's letter expressly references account number 7996554, which the parties agree is the account number of the Note at issue in this matter. Bradford has also adduced evidence that HSBC's written response to this request, which HSBC sent on November 21, 2008, neither identified nor gave the contact information for the then-owner of the Note.

[27] Indeed, Bradford's original complaint specifically alleged that HSBC failed to make adequate disclosures in response to several of Bradford's requests, which included Bradford's September 23, 2008 letter to HSBC. Bradford originally claimed that HSBC's failure to provide an adequate response to this letter violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2) and now claims that this same failure violated TILA. Thus, Bradford's new TILA claim against HSBC clearly "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," namely, Bradford's original complaint. Rule 15(c)(1)(B), Fed. R. Civ. P.

§1641(f)(2) does not specify a time period in which a servicer must respond to an obligor's request, and §1640(e) does not specify the length of delay that would constitute a "violation" of §1641(f)(2). HSBC and Bradford each argue that §1641(f)(2) effectively imports the deadline of a different statutory provision. HSBC contends that the claim is untimely because the violation occurred not when the inadequate response was mailed or received, but earlier, when HSBC did not send an adequate response within the *thirty*-day period provided by another subsection of TILA, 15 U.S.C. § 1641(g) and Bradford filed this action over one year after that thirty-day period lapsed. Bradford responds that his claim is timely because the violation occurred when HSBC did not adequately respond during the sixty-day period provided by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and he filed this action within one year of that date, namely on October 29, 2009.

Neither position is persuasive; there is no statutory warrant for importing either time period into § 1641(f)(2).[28] Instead, the language and structure of §§ 1641(f)(2) and 1640(e) make clear that a violation of §1641(f)(2) occurs, as some courts have sensibly concluded, either (i) after a "reasonable time" has passed since the obligor sent a request without the servicer having sent any response,[29] or (ii) when the servicer sends an inadequate response to that

---

[28] To the contrary, had Congress intended §1641(f)(2) to have a definite time period during which a servicer must send an adequate response, Congress would have explicitly included such a time period. Its choice not to do so counsels against using time periods from other statutory provisions and instead suggests congressional intent that the requisite time period should be a flexible one that depends on all the facts and circumstances of each case but is intended to be bounded by reasonableness. *See infra* note 29.

[29] *See In re Carlton*, No. 10-40388, 2011 WL 3799885, at *5 (Bankr. N.D. Ala. Aug. 26, 2011) ("Neither the TILA statute nor the regulations thereunder provide a specific time within which a request under § 1641(f)(2) must be answered; therefore, the answer must be made within a reasonable time."); *Ording v. BAC Home Loans*, Civ. No. 10-10670, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) (noting that "[s]ection 1641(f) does not specify a period for compliance

request.[30] In other words, the limitations period applicable to a §1641(f)(2) claim begins to run at the earlier of the expiration of a reasonable time or the sending of an inadequate response. Obviously, a cause of action under §1641(f)(2) does not accrue until the servicer has been given a reasonable period of time in which to respond to the request. Were this not so, a mortgage obligor could send a §1641(f)(2) request to the servicer on one day and then sue the servicer the very next day. In contrast to a non-response from a servicer, an *inadequate* response (*e.g.*, a response that fails to identify the current owner of the obligation) gives the mortgage obligor sufficient notice that the servicer has not complied with §1641(f)(2)'s requirements.[31]

In this case, HSBC's inadequate response was sent approximately sixty days after Bradford had sent his request. By no means can this period of time be said, as a matter of law, to be unreasonable. Thus, because Bradford filed his action within one year of November 23, 2008—the date on which HSBC sent its inadequate response—HSBC's argument fails, and Bradford's § 1641(f)(2) claim survives this bar.

Bradford also claims that Ally and RFC each violated § 1641(g), which provides that if a "mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" within thirty days. Ally argues that because §1641(g) was not in effect when it received ownership of

---

with this obligation" and therefore that "the requested information must be disclosed within a reasonable time") (internal citation omitted) (citing 12 C.F.R. § 226.36(c)(1)(iii)).

[30] *See Stephenson v. Chase Home Fin. LLC*, No. 10cv2639, 2011 WL 2006117, at *3 (S.D. Cal. May 23, 2011).

[31] An obligor who awaits a response to the obligor's request for the contact information of the obligation's current owner cannot know whether the servicer is either (i) processing that request in aim of complying with §1641(f)(2) or instead (ii) withholding that information in what, after a "reasonable time," will effect a violation of §1641(f)(2). But if the servicer sends a response within a reasonable time, the date on which an inadequate response is sent serves as an appropriate point in time at which the limitations period of § 1640(e) begins to run.

the Note in November 2006, it cannot be held liable under TILA for failing to notify Bradford of the transfer. Section 1641(g) applies only to transfers prior to the May 20, 2009 effective date of the amendments to TILA that added it. *See Angelini v. Bank of Am.*, No. Civ. 11-3011, 2011 WL 2433485, at *5 (D. Or. Apr. 27, 2011). As previously noted (*see* Subpart I.C), the undisputed material facts demonstrate that HSBC transferred the Note to Ally in November 2006, well before the May 2009 effective date of §1641(g). Nothing in TILA indicates that this provision should be applied retroactively, and retroactive application of the provision to Ally's receipt of the Note would undoubtedly and impermissibly "attach[] new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994). Thus, to give effect to the well-established presumption against retroactivity here compels the conclusion that Ally's failure to give Bradford notice that it had acquired the Note is not actionable under § 1641(g), which had no legally operative effect at the time of Ally's receipt of the Note. Ally is therefore entitled to summary judgment on the § 1641(g) claim.

RFC, which acquired the Note *after* §1641(g)'s effective date,[32] argues that the claim is untimely inasmuch as Bradford sought to add the §1641(g) claim over a year after the statute's 30-day period had ended. *See* 15 U.S.C. § 1640(e). This argument lacks merit because this record points persuasively to the conclusion that the one-year limitations period was equitably tolled until May 24, 2011, the date on which HSBC and Ally advised Bradford that RFC was the noteholder. *See Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 561–62 (E.D. Va. 2003) (concluding that "TILA is properly subject to equitable tolling when there has been fraudulent concealment of the plaintiff's cause of action"). Bradford sought to add the §1641(g) claim against RFC in

---

[32] It is undisputed that RFC purchased the Note in December 2009 without providing notice of this purchase to Bradford within thirty days. Curiously, if Bradford were correct that HSBC transferred the Note directly to RFC in November 2006, then his §1641(g) claim against RFC would fail because RFC would have acquired the Note well before the statute's effective date.

July 2011.  Until that time and while the limitations period was running, all three defendants unreasonably failed to disclose the identity of the noteholder throughout the various transfers, including the sale of the Note from Ally to RFC.  Indeed, TILA required that RFC disclose its acquisition of the Note.  *See Barnes*, 243 F. Supp. 2d at 564 ("[T]he TILA violation itself may serve as the concealment that triggers equitable tolling[.]").  These failures to disclose occurred despite Bradford's concerted efforts to ascertain the noteholder's identity[33]  and are tantamount to "affirmative acts of concealment" that prevented Bradford from discovering RFC's ownership of the Note before the May 2011 revelation.  *See Supermarket of Marlinton, Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 125 (4th Cir. 1995).  Accordingly, because Bradford sought to add the §1641(g) claim against RFC within one year of the date on which the tolling period ended—and therefore the date on which the statute of limitations began to run—RFC's argument that the §1641(g) claim is untimely fails.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.


Alexandria, Virginia
December 8, 2011

/s/
T. S. Ellis, III
United States District Judge

---

[33] HSBC was sanctioned for failing to comply with court orders relating to Bradford's discovery requests that sought, *inter alia*, the identity of the noteholder.  *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. Aug. 16, 2011) (Order).  Prior to the imposition of sanctions, HSBC and Ally misidentified the true noteholder (RFC) to Bradford between December 2009 (when Ally sold the Note to RFC) and May 2011 (when HSBC and Ally disclosed that RFC was the noteholder).