**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **NORMAN BRADFORD**<br>**Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:09cv1226** |
| **HSBC MORTGAGE CORPORATION, ALLY BANK, and RESIDENTIAL FUNDING COMPANY, LLC,**<br>**Defendants.** | ) | |

**MEMORANDUM OPINION**

This case addresses the jurisdictional consequences of declining, or allowing to lapse, a Rule 68, Fed. R. Civ. P, offer of judgment that provides complete relief to a plaintiff asserting a claim under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"). At issue, more specifically, are the following questions:

> (i) Whether a Rule 68 offer of judgment that provides a TILA claimant with full statutory damages, plus one dollar, costs and reasonable attorney's fees, as TILA provides, affords complete relief to the claimant where, as here, the only actual damages sought by the claimant are the attorney's fees claimant incurred in pursuing his TILA action;
>
> And, if so,
>
> (ii) Whether a TILA claim becomes moot so as to extinguish any case or controversy with respect to the claim where, as here, the claimant did not accept a Rule 68 offer that, if accepted, would have provided full relief on the claim.

**I.**

On September 20, 2006, plaintiff Norman Bradford ("Bradford") and defendant HSBC Mortgage Corp. ("HSBC") agreed to refinance the loan that had originally financed Bradford's purchase of his primary residence in Ashburn, Virginia (the "Ashburn home"). To this end, Bradford signed a promissory note (the "Note"), which was secured by a deed of trust on the Ashburn home that named HSBC as the lender. At the time of the refinancing, Bradford was not

provided with a "Truth in Lending" statement that would have informed him of his right to rescind the transaction pursuant to TILA. Indeed, Bradford has established as an undisputed fact "that various mandatory TILA disclosures were not provided at the time of closing, such that he was entitled to rescind his loan within the extended statutory three-year period." *Bradford v. HSBC Mortg. Corp.*, 799 F. Supp. 2d 625, 627 (E.D. Va. 2011). Several months after the refinancing, HSBC sold the Note to Ally Bank ("Ally"). Neither HSBC nor Ally informed Bradford of the sale at that time. On October 16, 2008, Bradford sent a letter to HSBC purporting to "exercise [Bradford's] right to rescind the mortgage transaction[.]" (Doc. 30-5). HSBC responded by letter dated December 17, 2008 declining to comply with Bradford's rescission request.

Bradford filed the instant action on October 29, 2009 alleging, *inter alia*, that several defendants, including HSBC, had violated § 1635 of TILA by failing to honor Bradford's request for rescission. On December 30, 2009, RFC purchased the Note from Ally in a transaction that involved RFC's acquisition of a bundle of mortgage loans.[1] At that time, RFC did not notify Bradford that it had acquired the Note, as RFC was required to do under a separate TILA provision, 15 U.S.C. § 1641(g). Bradford filed an amended complaint on August 5, 2010; neither Ally nor RFC was named as a defendant. After the original discovery period had closed on December 10, 2010, Bradford and HSBC filed cross-motions for summary judgment. At that time, the identity of the noteholder was unknown, and thus the parties were granted additional

[1] Although Bradford attempted to dispute this fact on summary judgment and continues to do so, the record evidence makes clear that there is no genuine dispute as to the fact that RFC purchased the Note from Ally on December 30, 2009. *See Bradford v. HSBC Mortg. Corp.*, --- F. Supp. 2d ---, 2011 WL 6148486, at **2–4 (E.D. Va. Dec. 8, 2011). Bradford adduced no admissible evidence to the contrary, and yet, he inexplicably continues to question this fact notwithstanding that "if Bradford were correct that HSBC transferred the Note directly to RFC in November 2006, then his §1641(g) claim against RFC would fail because RFC would have acquired the Note well before the statute's effective date." *Id.* at *8 n.32.

discovery so that the noteholder's identity could be ascertained. Initially, the parties represented, albeit incorrectly, that Ally was the current noteholder, so Bradford was granted leave to amend his complaint to add Ally as a defendant.[2] *See Bradford v. HSBC Mortg. Corp.*, 1:09cv1226 (E.D. Va. Mar. 11, 2011) (Order). Months later, HSBC correctly averred that RFC, not Ally, was the current noteholder. On June 6, 2011, Bradford was allowed to file a third amended complaint naming RFC as a defendant.

On July 22, 2011, Bradford's § 1635 claims were dismissed as untimely given TILA's three-year statute of repose for rescission claims. *See Bradford*, 799 F. Supp. 2d at 635. Thereafter, Bradford was allowed to file yet another amended complaint—the fourth—to add a claim that RFC violated § 1641(g) by failing to disclose in a timely fashion that it had acquired the Note. RFC then moved to dismiss the fourth amended complaint arguing, with respect to the § 1641(g) claim, that the claim was untimely. RFC's motion to dismiss was converted into a motion to summary judgment pursuant to Rule 12(d), Fed. R. Civ. P. and then denied as to the § 1641(g) claim on the ground that the claim had been timely asserted. *See Bradford v. HSBC Mortg. Corp.*, --- F. Supp. 2d ---, 2011 WL 6148486, at *8 n.32 (E.D. Va. Dec. 8, 2011). Subsequently, an Order issued scheduling a status conference. *See Bradford v. HSBC Mortg. Corp.*, 1:09cv1226 (E.D. Va. Dec. 8, 2011) (Order).

After the status conference, RFC tendered a Rule 68 offer of judgment to Bradford on December 14, 2011. This offer read as follows:

---

[2] In particular, "HSBC misidentified the true noteholder (RFC) to Bradford between December 2009 (when Ally sold the Note to RFC) and May 2011 (when HSBC and Ally disclosed that RFC was the noteholder)." *Bradford*, 2011 WL 6148486, at *8 n.33. Indeed, HSBC was sanctioned for its failure to adhere to court-ordered discovery by failing to respond properly to Bradford's request for the noteholder's identity. *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D. Va. Aug. 16, 2011) (Order).

> Residential Funding Company, LLC offers that the Plaintiff, Norman Bradford, take judgment against it for a single violation of the Truth in Lending Act, 15 U.S.C. § 1641(g), in the amount of FOUR THOUSAND AND ONE DOLLAR AND NO CENTS ($4,001.00), plus costs and reasonable attorney's fees in connection with this claim, if provided by statute.

(Doc. 261-1 at 2). Bradford allowed the offer to lapse as he did not accept it "within 14 days after being served[.]" Rule 68(a), Fed. R. Civ. P. Thereafter, on January 19, 2012, RFC filed the dismissal motion at bar pursuant to Rule 12(b)(1), Fed. R. Civ. P., arguing that because the offer of judgment would have afforded full relief to Bradford on his § 1641(g) claim had the offer been accepted, the offer served to render Bradford's § 1641(g) claim moot and thus dismissal of the claim is now required for lack of subject-matter jurisdiction. In his untimely response to RFC's motion,[3] Bradford asserts that RFC's offer "did not include attorney fees." (Doc. 270 at 3). In particular, Bradford contends that that he is "entitled to attorney fees attributable to RFC's and other defendants' wrongful conduct in preventing Bradford from discovering the identity of the owner of the debt." (*Id.*). RFC's dismissal motion has been fully briefed and argued and is now ripe for disposition.

**II.**

A motion to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., challenges the existence of subject-matter jurisdiction over the plaintiff's claim. When "the defendant challenges the veracity of the facts underpinning subject matter jurisdiction," then a district court "may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). *Accord Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (noting that in deciding a Rule 12(b)(1) motion, a

---

[3] Bradford failed to file his legal memorandum in opposition to RFC's motion within the eleven-day period prescribed by Rule 7(F)(1), E.D. Va. Local Civ. R., as enlarged by three days per Rule 6(d), Fed. R. Civ. P. This tardiness was excused.

district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment"). It is well-settled that a plaintiff "bears the burden of proving that this Court has subject matter jurisdiction" over his claim. *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). *Accord Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (noting that when "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence").

**III.**

At issue on RFC's motion to dismiss is whether the Rule 68 offer of judgment to Bradford on the § 1641(g) claim rendered the claim moot. The Fourth Circuit has recognized that "the doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction" under Article III, and that "a case is moot when . . . the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (citations and brackets omitted). For example, a claim becomes moot "when the claimant receives the relief he or she sought to obtain through the claim." *Simmons v. United Mortg. & Loan Invs.*, 634 F.3d 754, 763 (4th Cir. 2011) (citation and quotation marks omitted). In this respect, it is well-settled in the Fourth Circuit that "[w]hen a Rule 68 offer unequivocally offers a plaintiff all the relief she sought to obtain, the offer renders the plaintiff's action moot." *Warren v. Sessoms & Rogers, P.A.*, --- F.3d ---, 2012 WL 76053, at *3 (4th Cir. Jan. 11, 2012) (citations

and quotation marks omitted). Nor is this result unique to this circuit; all the circuits have addressed this issue have reached the same result.[4]

In this case, whether Bradford's § 1641(g) claim is now moot depends, in turn, on whether RFC's Rule 68 offer of judgment offered "the full amount of damages . . . to which [Bradford] claimed individually to be entitled" on his § 1641(g) claim such that "there was no longer any case or controversy" between Bradford and RFC. *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (affirming dismissal of claim rendered moot by Rule 68 offer of judgment). If the Rule 68 offer of judgment provided Bradford with everything he could have obtained through litigation, then the offer would have deprived Bradford of any personal stake in continuing to litigate the § 1641(g) claim and thereby rendered the claim moot.

There is no disagreement that the offer of statutory damages in the amount of $4,001.00 exceeded the amount of statutory damages that Bradford could have received at trial. *See* 15 U.S.C. § 1640(a)(2)(A)(iv) (providing that statutory damages for Bradford's particular TILA claim cannot be "greater than $4,000"). Instead, the parties' dispute centers on whether the Rule 68 offer of judgment, to qualify as affording complete relief, must have included a sum-certain amount for the attorney's fees Bradford asserts are actual damages caused by RFC's § 1641(g) nondisclosure violation. RFC argues that its offer of full statutory damages "plus costs and reasonable attorney's fees in connection with [the § 1641(g) claim], if provided by statute" would have fully satisfied the claim. Bradford counters that the offer of judgment was not

---

[4] *See, e.g., Samsung Elecs. Co. v. Rambus, Inc.*, 523 F.3d 1374, 1379 (Fed. Cir. 2008) (concluding that "[t]he district court had no case or controversy to continue to consider" after defendant "offered the entire amount . . . in dispute"); *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004) (observing that "under traditional mootness principles, an offer for the entirety of a plaintiff's claim will generally moot the claim"); *Greisz v. Household Bank (Ill.)*, 176 F.3d 1012, 1015 (7th Cir. 1999) (holding that a Rule 68 offer affording complete relief "eliminates a legal dispute upon which federal jurisdiction can be based").

sufficient to moot the claim because at least some of the attorney's fees he incurred prosecuting the instant action were "actual damage"[5] caused by RFC's § 1641(g) violation, and the offer did not specifically quantify these fees as damages. *See Warren*, 2012 WL 76053, at **5–6 (holding that offer of damages in an amount to be "determined by the Court" was equivocal and therefore did not render plaintiff's claim moot).

To resolve this dispute, the starting point is the text of TILA, which provides that "any creditor who fails to comply with any requirement imposed under this part," which includes the disclosure requirement of § 1641(g), is liable to the person entitled to receive such notice in an amount determined by a formula that includes several statutorily defined liabilities. One such liability is "any actual damage sustained by such person as a result of the failure[.]" 15 U.S.C. § 1640(a)(1). Thus, the question presented here is whether Congress intended the statutory phrase "actual damage" to include attorney's fees.

It did not so intend; indeed, Congress' contrary intent is manifest. Under TILA, a creditor's liability for a TILA violation also includes, "in the case of any successful action to enforce the foregoing liability . . . the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3). By explicitly providing in TILA for a successful claimant's recovery of reasonable attorney's fees expended in litigating the TILA action,[6] Congress made unmistakably clear its intent to distinguish sharply between "actual

[5] 15 U.S.C. § 1640(a)(1).

[6] Under § 1640(a)(3), an "action" embraces the entire lawsuit containing the successful TILA claim, and an "action can succeed when only one of its constituent claims prevails." *See Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 185–86 (4th Cir. 2007) (affirming district court's award of attorney's fees to a successful TILA claimant for fees incurred litigating an unsuccessful appeal on the issue of TILA's damages cap). Thus, a successful TILA claimant may recover all reasonable attorney's fees incurred litigating the lawsuit containing the successful TILA claim, including fees reasonably incurred advancing other, ultimately

damage" under TILA and "a reasonable attorney's fee" recoverable under TILA. Put simply, they are separate and distinct categories; attorney's fees that a TILA claimant incurs advancing his TILA action are not "actual damage" under TILA. To conclude otherwise would effectively render TILA's fee-shifting provision redundant or meaningless, a result plainly not intended by Congress. It follows that Bradford's attempt to label as "actual damage" under TILA the attorney's fees he incurred in pursuing his TILA action must fail. Although he may recover "reasonable attorney's fees" under § 1640(a)(3), those fees are not "actual damage" under § 1640(a)(1).

The distinction between attorney's fees incurred in pursuing a claim and damages attributable to the claim is firmly rooted in this country's jurisprudence through the American Rule, which provides that "unless Congress provides otherwise, parties are to bear their own attorney's fees." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (citing *Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–62 (1975)).[7] And, it is well-settled that "Congress legislates against the strong background of the American Rule"[8] and that "the American Rule presumes that the word 'damages' means damages *exclusive of fees*."[9] As the Tenth Circuit has put it, "the American Rule . . . ordinarily bars the recovery of attorney fees by the prevailing party in litigation, on the theory that such fees are a *cost of recovering damages*,

---

unsuccessful claims sharing "a common core set of facts" with the successful TILA claim. *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

[7] *Accord Alyeska Pipeline*, 421 U.S. at 245 (holding that under the American Rule "the prevailing party may not recover attorney's fees as costs *or otherwise*") (emphasis added); *Hardt v. Reliance Standard Life Ins. Co.*, --- U.S. ---, 130 S. Ct. 2149, 2157 (2010) ("Each litigant pays its own attorney's fees, win or lose, unless a statute or contract provides otherwise.").

[8] *Fogerty*, 510 U.S. at 533.

[9] *Summit Valley Indus. v. Local 112, United B'hood of Carpenters and Joiners of Am.*, 456 U.S. 717, 722–23 (1982) (emphasis added) (citations omitted).

not damages in themselves." *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 766–67 (10th Cir. 2004) (emphasis added).[10] Thus, where, as here, a litigant incurs attorney's fees advancing a claim, then absent a fee-shifting statute or agreement, those fees cannot be considered damages under the American Rule. Given this, it is clear that none of the attorney's fees Bradford seeks here qualify as "actual damage" under TILA because those fees, all of which were incurred advancing the instant TILA action, are simply a cost of recovering damages under TILA, not TILA damages themselves. Unsurprisingly, Bradford cites no case—and none has been found—in which attorney's fees incurred litigating a TILA action qualify as "actual damage" under TILA.[11]

Because Bradford's attorney's fees are not "actual damage" under TILA, it follows that RFC's Rule 68 offer of full statutory damages plus one dollar, the costs of the action, and "reasonable attorney's fees" would have provided Bradford with all the relief to which he was entitled for his § 1641(g) claim and therefore rendered that claim moot. *See Simmons*, 634 F.3d at 766 n.8 (holding that under TILA "when as here, the defendants have offered to pay the plaintiffs their reasonable attorney's fees as determined by the district court, the plaintiffs have been offered full relief" in that respect). Once the Rule 68 offer was received, Bradford no

---

[10] *Accord Summit Valley*, 456 U.S. at 725 n.3 (rejecting position that "fees be awarded whenever a defendant's wrongful conduct requires a plaintiff to incur more litigation expenses, even if those expenses are incurred *in the same action*") (emphasis in original); *Sternberg v. Johnson*, 595 F.3d 937, 946–47 (9th Cir. 2009) ("Under the American Rule, a plaintiff cannot ordinarily recover attorney fees spent to correct a legal injury as part of his damages, even though it could be said he is not made whole as a result.") (citing *Restatement (Second) of Torts* § 914(1) (1979) ("The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.")).

[11] Research discloses only one case, which is unpublished, in which attorney's fees were considered actual damages under TILA. But that case is plainly inapposite, as the fees there at issue were incurred litigating a *separate* legal proceeding, not the TILA proceeding there at bar. *See Lippner v. Deutsche Bank Nat'l Trust Co.*, No. 07cv448, 2008 WL 4200654 (N.D. Ill. Sept. 9, 2008).

longer needed to litigate to obtain all the relief he sought through litigation, *viz.*, a judgment against RFC for $4,000 in statutory damages, as well as reasonable attorney's fees and costs. Bradford, in other words, lost any personal stake in litigating the § 1641(g) claim after receiving RFC's Rule 68 offer of judgment, and his § 1641(g) claim was thereby rendered moot.

**IV.**

Because Bradford's § 1641(g) claim is now moot, the claim must be dismissed. As a constitutional matter,[12] Bradford never regained a personal stake in advancing his § 1641(g) claim because the expiration of the Rule 68 offer of judgment did not change what made the claim moot in the first place, namely, that Bradford could have obtained through acceptance of the offer all he could have hoped to obtain through litigation. It follows that Bradford's claim became moot at the time he received the offer, and because no case or controversy remains, the claim must now be dismissed. *See Zimmerman*, 800 F.2d at 390 (noting in a securities fraud case that plaintiff's "personal stake in the outcome had disappeared" and her claim had become moot after she had received an offer of judgment in full satisfaction of her claim); *Samsung Elecs. Co. v. Rambus, Inc.*, 523 F.3d 1374, 1380 (Fed. Cir. 2008) (concluding that "the offer of the full amount in dispute brought an end to the case and controversy"). The Seventh Circuit put the point with elegant brevity: "You cannot persist in suing after you've won." *Greisz v. Household Bank (Ill.)*, 176 F.3d 1012, 1015 (7th Cir. 1999).

---

[12] Even as a prudential matter, to allow adjudication of a claim rendered moot by a Rule 68 offer of judgment after the offer's expiration (i) wastes judicial resources, (ii) forces unnecessary expenses on defendants, and (iii) runs directly contrary to Rule 68's settlement-encouragement purpose. *Cf. Abrams v. Interco, Inc.*, 719 F.2d 23, 32 (2d Cir. 1983) (noting that "there is no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which defendant has more than satisfied"); Matthew I. Hall, *The Partially Prudential Doctrine of Mootness*, 77 Geo. Wash. L. Rev. 562 (2009) (discussing mootness as prudential doctrine).

Fourth Circuit authority on this point is sparse, but nonetheless supportive of the result reached here. In *Zimmerman*, the Fourth Circuit affirmed a district court's dismissal of an individual plaintiff's securities-fraud claims after "defendants had offered [plaintiff] the full amount of damages [] to which she claimed individually to be entitled[.]" 800 F.2d at 390 (noting that "federal courts do not sit simply to bestow vindication in a vacuum"). Also pertinent are two recent cases where the Fourth Circuit was presented with the question whether a particular offer of judgment rendered a claim moot. In each case, the Fourth Circuit reversed the district court's dismissal of the action for mootness because the offer at issue did not actually afford full relief. *See Warren*, 2012 WL 76053, at *6; *Simmons*, 634 F.3d at 767. There is no doubt, however, that in the Fourth Circuit's view, had the offer of judgment at issue provided full relief, the claim would have been rendered moot. *See Warren*, 2012 WL 76053, at *3 (noting that "had [plaintiff] made a specific demand in the amended complaint for actual damages and the defendants offered that amount or more, the offer of judgment would have mooted [plaintiff's] action"); *Simmons*, 634 F.3d at 762–63 (acknowledging that a claimant's receipt of full relief can render a claim moot as a constitutional matter). Thus, the conclusion that Bradford's § 1641(g) claim must be dismissed as moot is fully consistent with Fourth Circuit precedent.

The expiration of the Rule 68 offer that rendered Bradford's § 1641(g) claim moot extinguished power to enter judgment on the claim. Some courts, including the Sixth Circuit, have taken the position that judgment on a claim rendered moot by a Rule 68 offer should be entered per the offer's terms, notwithstanding that the offer has lapsed or been rejected. *See,*

*e.g.*, *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 575 (6th Cir. 2009).[13] The decisions of these courts, none of which is binding here, are unpersuasive because a federal court has no power to enter judgment on a moot claim absent a stipulation to entry of judgment, a point that none of these decisions addresses.[14] *See Samsung Elecs.*, 523 F.3d at 1381 (holding that "the district court [] lacked subject matter jurisdiction to rule on the attorney fees motion" and remanding case with instructions to dismiss complaint as moot). In other words, these decisions fail to explain what would give a federal court power, in effect, to compel a plaintiff to accept an expired Rule 68 offer that had rendered the plaintiff's claim moot. Indeed, to adopt the position of these courts would render Rule 68's time limitation for acceptance negatory where a Rule 68 offer affords complete relief on a claim because judgment could later be entered per the offer's terms even if the offer had been rejected or allowed to lapse. These fatal shortcomings of the position of the Sixth Circuit and other courts counsel against adopting their approach here.

In sum, consistent with authority from the Fourth Circuit and elsewhere, Bradford's § 1641(g) claim must be dismissed for lack of jurisdiction. *See, e.g.*, *Holstein v. City of Chi.*, 29 F.3d 1145, 1147 (7th Cir. 1994) (concluding that "[plaintiff] may not spurn this offer of all the damages he is owed" and that "his claim must be dismissed for lack of subject matter

---

[13] *See also Ambalu v. Rosenblatt*, 194 F.R.D. 451 (E.D.N.Y. 2000); *Greif v. Wilson, Esler, Moskowitz, Edelman & Dicker LLP*, 258 F. Supp. 2d 157 (E.D.N.Y. 2003); *Murphy v. Equifax Check Servs.*, 35 F. Supp. 2d 200 (D. Conn. 1999).

[14] To be sure, if Bradford had accepted the Rule 68 offer, then power to enter the consented-to judgment would have remained even though power to adjudicate the claim further—*e.g.*, to decide whether to dismiss it, grant summary judgment on it, or hold a trial on it—would have been extinguished. *See Greisz*, 176 F.3d at 1015 (noting that a fully satisfactory Rule 68 offer of judgment "giv[es] the plaintiff the equivalent of a default judgment" and also "eliminates a legal dispute upon which federal jurisdiction can be based").

jurisdiction").[15] And, because subject-matter jurisdiction over Bradford's § 1641(g) claim has been extinguished, judgment on the claim cannot now be entered. *See Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because he has no remaining stake."); *Greisz*, 176 F.3d at 1015 (observing that a TILA claimant's lawyer, "by spurning the defendant's offer . . . shot both himself and his client in the foot" inasmuch as "[h]e lost his claim to attorney's fees by turning down the defendant's offer to pay them, and [plaintiff] lost $1,200" in statutory damages).

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 23, 2012

/s/
T. S. Ellis, III
United States District Judge

---

[15] *See also supra* note 4 (citing cases).