IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NORMAN BRADFORD,                          )
    Plaintiff,                            )
                                       )
                  v.                       )      Case No. 1:09cv1226
                                       )
HSBC MORTGAGE CORPORATION,                )
    Defendant.                            )

### MEMORANDUM OPINION

This is the latest chapter in a rather long-running TILA[1] saga that bids fair to be the

*Jarndyce v. Jarndyce*[2] of TILA matters. At issue in this chapter is plaintiff Norman Bradford's

motion for reconsideration of the July 22, 2011 Order dismissing his TILA rescission and

wrongful failure to rescind claims. *See Bradford v. HSBC Mortg. Corp.*, No. 1:09cv1226 (E.D.

Va. July 22, 2011) (Order). The July 22 Order, focusing chiefly on the rescission claim,

dismissed the TILA claims as time-barred as Bradford had filed his TILA action outside TILA's

three-year statute of repose. *See id.* Bradford now seeks reconsideration of the July 22 Order

insofar as it dismissed his claim that defendants wrongfully failed to grant his rescission request

in violation of TILA, arguing that this claim was not time-barred. For the reasons that follow,

the July 22 Order correctly dismissed the TILA wrongful failure to rescind claim because that

claim—based on the erroneous premise that a borrower's notice to a lender of intent to rescind

triggers the lender's duty to effect rescission—fails to state a claim on which relief can be

granted. Accordingly, the motion for reconsideration must be denied.

---

[1] Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA").

[2] *See generally* Charles Dickens, *Bleak House* (Nicola Bradbury, ed. 2011).

I.

The facts and procedural history pertinent to the instant motion have been exhaustively detailed in prior memorandum opinions,[3] but may be briefly summarized here. On September 20, 2006, Bradford signed a promissory note in favor of defendant HSBC Mortgage Corporation ("HSBC") to refinance the loan that facilitated the purchase of his primary residence in Ashburn, Virginia (the "Ashburn home"). At the time of closing, HSBC did not provide Bradford with "various mandatory TILA disclosures[.]" *Bradford v. HSBC Mortg. Corp.*, 799 F. Supp. 2d 625 (E.D. Va. 2011). Several months after closing, HSBC sold the Note to defendant Ally Bank ("Ally"). In an October 16, 2008 letter to HSBC, Bradford purported to "exercise [his] right to rescind the mortgage transaction[.]" (Doc. 30-5). By letter to Bradford dated December 17, 2008, HSBC responded that "[t]here was no right to rescind" and thereby refused to honor Bradford's rescission request, even though Ally was the noteholder at that time. (Doc. 30-6).

Bradford filed the instant action on October 29, 2009, just months before Ally sold the note to Residential Funding Company, LLC ("RFC"). Counts I and II of Bradford's original complaint were based on the allegation that Bradford had a right to rescind the refinancing transaction pursuant to § 1635 of TILA, but sought different remedies. In particular, Count I alleged that Bradford was entitled to a court-ordered rescission of the transaction, and Count II alleged that Bradford was entitled to an award of damages for defendants' failure to honor his rescission request. On June 23, 2011, defendants HSBC, Ally, and RFC moved to dismiss Bradford's § 1635 claims pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground that the

---

[3] *See Bradford v. HSBC Mortg. Corp.*, 799 F. Supp. 2d 625 (E.D. Va. 2011) ("*Bradford I*"); *Bradford v. HSBC Mortg. Corp.*, --- F. Supp. 2d ----, 2011 WL 6148486 (E.D. Va. 2011) ("*Bradford II*"); *Bradford v. HSBC Mortg. Corp.*, --- F. Supp. 2d ----, 2012 WL 603183 (E.D. Va. 2012) ("*Bradford III*").

claims were untimely asserted.  On July 22, 2011, an Order issued dismissing both the § 1635 rescission claim and the § 1635 failure-to-rescind claim as untimely.[4]

On February 2, 2012—over six months after the July 22 Order dismissing the § 1635 claims had issued—Bradford filed the instant motion for reconsideration in which he argues that dismissal of his § 1635 failure-to-rescind claim was incorrect on the ground that because defendants' refusal to honor Bradford's rescission request occurred within the three-year period and constituted a separate TILA violation, the untimeliness of his claim for rescission was not fatal to his claim for wrongful failure to rescind.  Defendants[5] respond that Bradford's reconsideration motion is procedurally deficient and that the July 22 Order was correct in its dismissal of Bradford's § 1635 failure-to-rescind claim as untimely.  The reconsideration motion has been fully briefed and argued and is now ripe for disposition.

## II.

In dispute at the threshold is the proper standard of review.  Because Bradford's motion is directed at the July 22 Order's partial dismissal of his action, Bradford is correct that the motion is governed by Rule 54(b), Fed. R. Civ. P., which provides that:

> any order or other decision . . . that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

---

[4] In the Memorandum Opinion that issued contemporaneously with the July 22 Order, it was explained that "a borrower must bring an action to enforce the TILA rescission right within three years of closing regardless of whether the borrower submits timely notice of rescission to the creditor prior to the end of the three-year period." *Bradford I*, 799 F. Supp. 2d at 633.

[5] Although defendants Ally and RFC have been dismissed as parties, their interest in the finality of the July 22 Order makes it appropriate to consider their joint memorandum in opposition to the instant motion.

Indeed, "[t]he Fourth Circuit has made clear that where . . . the entry of *partial* summary judgment fails to resolve all claims in a suit, Rule 54[]—not Rule 59(e) or 60(b)—governs a motion for reconsideration[.]" *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 546–47 (E.D. Va. 2010) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). The July 22 Order granted defendants' motion to dismiss as to Bradford's § 1635 claims but allowed another claim to proceed. In this sense, the July 22 Order was not a final judgment or order as it did not decide all the parties' rights and liabilities. As a result, Bradford "is not required to make a showing of extraordinary circumstances" as would be required under Rules 59(e) and 60(b)(6). *Netscape*, 704 F. Supp. 2d at 547. Instead, the decision to afford relief from the July 22 Order is discretionary and may be exercised "as justice requires." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 463 (E.D. Va. 2011) (quoting *Fayetteville Invs. v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991)). In short, as Bradford correctly argues, the task here in determining whether the July 22 Order properly dismissed Bradford's claim for wrongful failure to rescind under § 1635 "is to reach the correct judgment under law." *Am. Canoe*, 326 F.3d at 515.

### III.

At issue on a motion for reconsideration is whether the July 22 Order correctly dismissed Bradford's claim that defendants wrongfully denied his request for rescinding the Ashburn home refinancing agreement in violation of TILA. Whether dismissal was proper depends, in turn, on whether Bradford, in his Third Verified Amended Complaint, stated a valid claim that HSBC, Ally, or RFC violated § 1635(b), the TILA provision concerning a borrower's exercise of rescission rights. Bradford asserts that these defendants violated § 1635(b) when they refused to void the security interest in the Ashburn home and return to Bradford all proceeds paid in

4

connection with the Note within 20 days of receiving Bradford's notice of intent to rescind the

mortgage refinancing transaction. Section 1635(b) provides that when a borrower "exercises his

right to rescind" a secured transaction, "any security interest . . . becomes void upon such a

rescission." 15 U.S.C. § 1635(b).[6]   The statute further provides that "[w]ithin 20 days after

receipt of a notice of rescission," the lender must return to the borrower "any money or property

given as earnest money, downpayment, or otherwise, and shall take any action necessary or

appropriate to reflect the termination of any security interest created under the transaction." *Id.*

Finally, the statute notes that its prescribed procedures "shall apply except when otherwise

ordered by a court." *Id.*  Thus, the question presented is whether, on the basis of facts alleged in

the Third Verified Amended Complaint, Bradford stated a claim that defendants' refusal to honor

Bradford's request for rescission constituted a violation of § 1635(b).

---

[6] The full text of § 1635(b) is reproduced as follows:

> When an obligor exercises his right to rescind under subsection (a) of this section,
> he is not liable for any finance or other charge, and any security interest given by
> the obligor, including any such interest arising by operation of law, becomes void
> upon such a rescission.  Within 20 days after receipt of a notice of rescission, the
> creditor shall return to the obligor any money or property given as earnest money,
> downpayment, or otherwise, and shall take any action necessary or appropriate to
> reflect the termination of any security interest created under the transaction.  If the
> creditor has delivered any property to the obligor, the obligor may retain
> possession of it.  Upon the performance of the creditor's obligations under this
> section, the obligor shall tender the property to the creditor, except that if return of
> the property in kind would be impracticable or inequitable, the obligor shall
> tender its reasonable value.  Tender shall be made at the location of the property
> or at the residence of the obligor, at the option of the obligor.  If the creditor does
> not take possession of the property within 20 days after tender by the obligor,
> ownership of the property vests in the obligor without obligation on his part to
> pay for it.  The procedures prescribed by this subsection shall apply except when
> otherwise ordered by a court.

15 U.S.C. § 1635(b).

At the heart of the instant dispute is what lender obligations, if any, are triggered under §
1635(b) by a borrower's notice of intent to rescind. Under defendants' reading of this statutory
provision, a lender's receipt of notice that a borrower intends to rescind the transaction does not
trigger an obligation under § 1635(b) that the lender must promptly void the security interest and
return all proceeds that the borrower has paid. Bradford reads § 1635(b) differently. Under his
understanding of the statute, a lender violates § 1635(b) if it does not void the security interest
and return all money paid within 20 days of receiving the borrower's notice of intent to rescind.
Although a literal reading of § 1635(b) might, at first blush, appear to support Bradford's
understanding, a careful analysis of the statutory text in light of applicable precedent reveals that
defendants are correct in their reading of § 1635(b).

When the statutorily prescribed rescission process is traced from beginning to end, it
becomes quite clear that the borrower's notice of intent to rescind, by itself, imposes no duties to
rescind on the lender under § 1635(b). This statutory process begins by requiring a borrower
who intends to rescind a secured transaction to deliver notice to the lender of his intent to
rescind. Then, under § 1635(b), the lender has twenty days to decide whether it will (i)
recognize the existence of a rescission right and privately arrange rescission with the borrower
and any other interested parties, or instead (ii) dispute the existence of a rescission right and
await the borrower's initiation of suit. Significantly, under § 1635(b) receipt of a notice to
rescind, without more, does not obligate a lender to void the security interest and return the
proceeds to the borrower; instead, delivery of the borrower's notice of intent to rescind merely
"advance[s] a claim seeking rescission." *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821
(4th Cir. 2007) (citation omitted). Then, in the event that the lender does not voluntarily effect
rescission, the borrower, after twenty days have passed since the delivery of notice of intent to

rescind, may file an action seeking judicially enforced rescission under § 1635(b). Thereafter, pursuant to § 1635(b)'s grant of authority to order rescission, a court determines whether to order rescission and, if rescission is ordered, the manner in which rescission will be effected (e.g., what amount the TILA claimant must tender, when tender must take place, whether the tender will precede the voiding of the security interest, etc.). Finally, a court determines what additional relief may be awarded pursuant to §§ 1635(g) and 1640(a). Thus, only after a court recognizes that the borrower is entitled to rescission does § 1635(b) impose any affirmative obligation on a lender. It follows that a cause of action in damages for a lender's failure to effect rescission does not accrue where, as here, a borrower has sent the lender a notice of intent to rescind, but no court has yet ruled that he is entitled to rescission.

Although there is no controlling circuit precedent, analogous circuit authority firmly supports the result reached here, namely, that a borrower's notice to the lender of his intent to rescind does not automatically trigger the lender's obligation to effect rescission. In *American Mortgage Network, Inc. v. Shelton*,[7] a borrower obtained a loan to refinance an existing loan on his primary residence. To obtain the loan, the borrower gave the lender a security interest in the residence, but shortly thereafter, the borrower sent the lender a notice of his intent to rescind the transaction. The lender responded by indicating that it "was prepared to unwind the transaction in accordance with TILA, upon receipt of confirmation from [the borrower] that he was prepared to return the net loan proceeds." 486 F.3d at 818.[8] Unable to tender all proceeds, the borrower told the lender that it "was required under TILA to release its security interest on the house immediately without a specific agreement . . . to return the net loan proceeds." *Id.* The lender

---

[7] 486 F.3d 815 (4th Cir. 2007).

[8] "Net loan proceeds" consisted of "the original principal amount of the loan less all amounts charged to [the borrower] in connection with the transaction." *Id.*

brought an action against the borrower "seeking modification of the TILA rescission procedures and an order declaring its full compliance with TILA;" thereafter, the borrower "counterclaimed for declaratory relief and monetary damages" under TILA. *Id.* On summary judgment, the district court (i) granted the lender's claim for a declaratory judgment that it had complied with TILA and (ii) dismissed the borrower's TILA claims with prejudice. *See Am. Mortg. Network, Inc. v. Shelton*, No. 3:05cv83, 2006 WL 909415 (W.D.N.C. Apr. 6, 2006).

On appeal, the Fourth Circuit rejected the borrower's argument that § 1635(b) "require[es a lender] to unconditionally release the security interest within 20 days of notification of cancellation" irrespective of the borrower's "admitted inability to tender the balance due on the loan[.]" 486 F.3d at 820. A secured loan, the Fourth Circuit reasoned, is rendered void only when a creditor voluntarily voids the security interest or a court orders rescission. *Id.* at 821.[9] In this respect, the Fourth Circuit concluded that a borrower's "unilateral notification of cancellation does not automatically void the loan contract" under TILA. *Id.* A contrary construction of § 1635(b) would give TILA claimants "the right to simply walk away with a windfall . . . without any further obligation," a result certainly not intended by Congress. *Id.* at 820. Ultimately, the Fourth Circuit concluded that the lender had "fully complied with all the requirements of TILA in connection with this loan" and affirmed the district court's judgment in all respects. *Id.* at 822.

In light of the Fourth Circuit's reasoning in *Shelton*, it cannot be that a borrower's notice of intent to rescind is at once insufficient to render the security interest void (as the Fourth Circuit held), and yet also sufficient to require that the lender void the security interest on its own

---

[9] *See Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003) (holding that under § 1635(b) "the security interest 'becomes void' only when the consumer 'rescinds' the transaction," which "[i]n a contested case, happens when the right to rescind is determined [by a court] in the borrower's favor").

(as Bradford argues). Recognition of such a requirement and the resulting prospect of damages liability against a lender that refuses to honor a rescission request would, in substantial effect, make rescission automatic upon delivery of that notice, a result squarely foreclosed in *Shelton*. In this sense, just as "it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest,"[10] it also was not the intent of Congress to threaten damage awards against lenders who, upon receiving a borrower's notice of intent to rescind, do not resign themselves to becoming unsecured creditors or to granting indefinite, interest-free loan extensions. Thus, because a borrower's notice of intent to rescind does not automatically unwind the secured transaction, it follows that § 1635(b) cannot require that a lender unilaterally void the security interest and return all loan payments merely because the lender has received such notice.

Several district-court decisions in this circuit and elsewhere accord with the result reached here, namely, that mere notice of intent to rescind does not obligate a lender under § 1635(b) to effect rescission.[11]  Other courts have reached a contrary result,[12] although much of

---

[10] *Shelton*, 486 F.3d at 820–21.

[11] *See, e.g., Horton v. Cal. Credit Corp. Ret. Plan,* --- F. Supp. 2d ---, 2011 WL 6130801, at *9 (S.D. Cal. 2011) (concluding that "[b]ecause Defendant here contested Plaintiffs' right to rescission, Plaintiffs have not yet 'rescinded' the transaction" and that, as a result, "Defendant has not violated any provision of § 1635"); *Yowell v. Res. Mortg. Solution, LLC,* No. 3:10cv63, 2011 WL 3654388, at *8 (W.D. Va. Aug. 17, 2011) (holding that "[p]laintiff's request for statutory damages and attorney's fees [] fails, given that [his] purported notice of rescission did not entitle him to unilaterally rescind the loan transaction"). *Cf. Hudson v. Bank of Am.,* No. 3:09cv462, 2010 WL 2365588, at *6 (E.D. Va. June 11, 2010) ("[U]nder § 1635, an assignee is not obligated to automatically release its security interest in an obligor's property when presented with a mere allegation of a TILA violation and no offer to tender the proceeds of the loan.") (citing *Shelton*, 486 F.3d at 821).

[12] *See, e.g., Midouin v. Downey Sav. & Loan Ass'n,* --- F. Supp. 2d ----, 2011 WL 4529646, at *9 (E.D.N.Y. 2011) ("The failure to respond to a valid notice of rescission within twenty days of receipt is a separate violation of TILA."); *DeVary v. Countrywide Home Loans, Inc.,* 701 F.

this disagreement appears in unpublished decisions.[13] Most courts of appeals that have reached

such a contrary result have done so only in *dicta*,[14] but the First Circuit has squarely held, as a

---

Supp. 2d 1096, 1103 (D. Minn. 2010) ("Assuming that [the lender] acted unlawfully in refusing [the borrower's] rescission request, [the lender's] refusal constituted an independent TILA violation[.]"); *Harris v. OSI Fin. Servs.*, 595 F. Supp. 2d 885, 896 (N.D. Ill. 2009) ("A creditor's failure to honor a valid rescission request made pursuant to Section 1635 can subject that creditor to actual and statutory damages as enumerated in TILA."); *Buick v. World Sav. Bank*, 637 F. Supp. 2d 765, 771–72 (E.D. Cal. 2008) ("The failure of a lender to properly act on a rescission is a new violation separate and distinct from the disclosure violation that gave rise to the right to rescind.") (citation omitted); *Wilson v. Homeowners Loan Corp.*, 263 F. Supp. 2d 1212, 1218 (E.D. Mo. 2003) ("A failure to recognize a proper rescission, whenever it is made or for whatever proper reason, is a separate TILA violation, of course."); *Malfa v. Household Bank, F.S.B.*, 825 F. Supp. 1018, 1020 (S.D. Fla. 1993) ("[T]he refusal to honor a rescission notice, in violation of 15 U.S.C. § 1635, gives rise to a separate § 1640 claim for damages.").

[13] *See, e.g.*, *Chandler v. Wash. Mut. Bank, N.A.*, Civ. No. 10-487, 2011 WL 6140926, at *10 (D. Hawai'i Dec. 9, 2011) (denying defendants' summary-judgment motion on wrongful failure to rescind claim); *Sall v. Bounassissi*, Civ. No. 10-2245, 2011 WL 2791254, at *8 & n.7 (D. Md. July 13, 2011) (noting that a claim for damages based on refusal to rescind under § 1635(b) "is separate and distinct from any now time-barred claims associated with disclosures at the time of closing" and attempting to distinguish *Shelton*); *Stewart v. BAC Home Loans Servicing, LP*, No. 10cv2033, 2011 WL 862938, at *6 (N.D. Ill. Mar. 10, 2011) ("A claim for damages for failure to honor rescission is based on § 1635(b) of TILA, which requires a creditor to respond to a notice of rescission within twenty days of receipt."); *Yarney v. Wells Fargo Bank, N.A.*, No. 3:09cv50, 2010 WL 3075460, at *11 (W.D. Va. Aug. 5, 2010) ("Assuming, *arguendo*, the existence of a properly-stated claim for rescission under TILA, [the lenders] would have had 20 days in which to comply . . . with a notice of rescission[.]"); *Challenger v. U.S. Bank*, Civ. No. 08-1523, 2009 WL 708116, at *4 (D.N.J. Mar. 13, 2009) ("Where a valid rescission request is wrongfully refused, the borrower is entitled to damages proximately caused by that refusal."), *quoted in Schafer v. Decision One Mortg. Corp.*, Civ. No. 08-5653, 2009 WL 1532048, at *5 (E.D. Pa. May 29, 2009).

[14] For example, the Ninth Circuit in *Miguel v. Country Funding Corp.* appears to recognize, albeit by implication, that § 1635 affords a "failure-to-effect-rescission" claim, but the precise question whether such a claim arises when a lender does not effect rescission after receiving a borrower's notice of intent to rescind was neither presented nor decided in that case because the claim was time-barred in any event. 309 F.3d 1161, 1165 (9th Cir. 2002). *See also, e.g.*, *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 903 (3rd Cir.1990) (noting in *dictum* that the lender could be "liable for statutory damages based on [the borrowers'] timely claim that [the lender] wrongfully denied their request to rescind the transaction" but later concluding that the borrowers' lack of right to rescission was fatal to their wrongful-rescission claim); *Smith v. Am. Fin. Sys., Inc. (In re Smith)*, 737 F.2d 1549, 1552 (11th Cir. 1984) (noting in *dictum* that "[i]f [the borrower] had a right to rescind . . . [the lender] could be liable for monetary damages" but ultimately holding that the borrower had no such rescission right); *Arnold v. W.D.L. Invs., Inc.*,

matter of first impression in that circuit, that a lender's failure to effect rescission within twenty days of receiving a borrower's notice of intent to rescind is actionable under § 1635(b). In *Belini v. Washington Mutual Bank, FA*, the First Circuit understood § 1635(b) as "plac[ing] certain requirements upon a creditor: upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest." 412 F.3d 17, 25 (1st Cir. 2005). Given this, the First Circuit concluded that "[s]hould the creditor not take these steps within twenty days, then the [creditor] has generally violated a 'requirement' of section 1635 and can be held liable for damages under section 1640." *Id.* This understanding of § 1635(b), which Bradford urges should be adopted here, suffers from several critical flaws that ultimately render it unpersuasive.

First, Bradford's understanding is foreclosed by the Fourth Circuit's analogous and binding decision in *Shelton*. As noted *supra*, to adopt Bradford's understanding of § 1635(b) would effectively make rescission automatic by other means (*i.e.*, a statutory requirement that lenders in receipt of a borrowers' notice of intent to rescind must effect rescission) in direct contradiction of the Fourth Circuit's ruling in *Shelton*. Indeed, it cannot be that § 1635(b) was intended to work at cross-purposes with itself by keeping a security interest intact even after a borrower notices his intent to rescind, but also requiring that a lender void the security interest and return all loan proceeds. This observation has gone unaddressed by decisions of other courts that have attempted to reconcile, on the one hand, the holding that a notice of intent to rescind

---

703 F.2d 848, 850 (5th Cir. 1983) (noting that a lender's failure to rescind "may result in the creditor incurring statutory damages" but not addressing whether such damages were appropriate in the case there at bar).

Similarly, a prior decision in this division merely suggests, without deciding, that a lender's failure to respond to a borrower's notice of intent to rescind is actionable in damages under § 1635(b) because, in that case, the damages claim was not timely filed. *See Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589–90 (E.D. Va. 2006).

does not automatically effect rescission with, on the other, their understanding of § 1635(b) that

such notice requires immediate rescission by the lender. These courts see no conflict inasmuch

as, in their view, § 1635(b) prohibits only a lender's *wrongful* failure to grant a borrower's

rescission request.[15] But § 1635(b) contains no such wrongfulness requirement, and indeed, the

statute supplies no meaningful guidance on what might render a lender's refusal to grant a

borrower's rescission request wrongful.[16] In the end, the inability to reconcile Bradford's

---

[15] *See Belini*, 412 F.3d at 25 n.3 ("*Large* is not in conflict with our holding here: rescission is not automatic when a notice of rescission is sent, but a creditor can still be held liable for *wrongfully* refusing to rescind when asked to do so by a [lender].") (emphasis added). One court in this circuit found this reasoning persuasive. *See Sall*, 2011 WL 2791254, at *8 n.7 (citing *Belini* for this proposition and attempting to distinguish *Shelton* similarly).

[16] Given that "wrongful" does not appear in § 1635(b), nor does TILA define the term, it is not surprising that courts reading the term (or a similar term) into the statute have been less than uniform in defining the circumstances under which a lender's failure to rescind violates § 1635(b). *Compare, e.g., Challenger*, 2009 WL 708116, at *4 (lender's failure to effect rescission within twenty days of receiving notice of intent to rescind actionable under § 1635(b) if "a rescission request is wrongfully refused"); *with Midouin*, 2011 WL 4529646, at *9 (actionable if notice is "valid"), *Harris*, 595 F. Supp. 2d at 896 (same); *with DeVary*, 701 F. Supp. at 1103 (actionable if refusal was "unlawful"); *with Buick*, 637 F. Supp. 2d at 771–72 (actionable if lender failed " to properly act on a rescission") (citation omitted), *Wilson*, 263 F. Supp. 2d at 1218 (actionable if lender failed "to recognize a proper rescission"); *with Stewart*, 2011 WL 862938, at *6 (actionable if lender does not "respond to a notice of rescission within twenty days of receipt").

Moreover, even assuming, *arguendo*, that the circumstances under which a lender's failure to rescind becomes "wrongful" could be correctly ascertained, recognition that such a wrongful failure is actionable in damages would raise other difficult issues on which TILA offers little, if any, instruction. For instance, it is hardly clear whether the wrongfulness of the lender's refusal would be judged based only on information known or available to the lender, or rather on a court's *ex post* determination that the borrower is entitled to rescission. It is also far from clear whether an assignee's failure to effect rescission would be wrongful where, as here, the assignee never received the notice of intent to rescind that was sent to the original creditor only. Finally, where, as here, a borrower sends the lender a notice of intent to rescind within TILA's three-year repose period but files his TILA action outside that period and thus is no longer entitled to court-ordered rescission, it would be difficult to determine whether the borrower, counterfactually, would have been entitled to rescission but for the lapse of the statute of repose.

understanding of § 1635(b) with the Fourth Circuit's central holding in *Shelton* points

persuasively to the conclusion that his understanding should not be adopted here.

Additionally, Bradford's understanding that § 1635(b) requires a lender to effect

rescission once it receives a borrower's notice of intent to rescind is wholly inconsistent with §

1635(b)'s vesting of equitable discretion in courts to decide whether and how to effect rescission.

It is well-settled that a district court may "in exercising its powers of equity . . . den[y] rescission

or base[] the unwinding of the transaction on the borrowers' reasonable tender of the loan

proceeds" depending on the particular circumstances of the case. *Shelton*, 486 F.3d at 821.[17]

Indeed, § 1635(b) expressly gives a district court this power to deny rescission or modify the

procedures by which rescission is effected. *See* 15 U.S.C. § 1635(b) ("The procedures

prescribed by this subsection shall apply *except when otherwise ordered by a court*.") (emphasis

added). Because § 1635(b) merely prescribes "procedural requirements"[18] that a district court

may adapt at its discretion, it is clear that mere notice of intent to rescind does not trigger a

lender's obligation to effect rescission immediately given that a lender cannot know with

certainty *ex ante* whether a court will deny rescission or modify the procedure for effecting

rescission.[19]  In other words, § 1635(b) cannot, at once, be a set of default procedures a court

---

[17] *Accord Yamamoto*, 329 F.3d at 1171, 1173 (describing equitable considerations relevant to the determination whether to modify § 1635(b)'s default procedures in a given case). *See also FDIC v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir. 1991) ("TILA generally provides that the creditor shall perform first (*i.e.*, return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the debtor's prior return of the principal.").

[18] *Shelton*, 486 F.3d at 820.

[19] Indeed, a lender cannot predict *ex ante* whether a court will exercise its discretion to grant the equitable remedy of rescission.  Nor can a lender predict *ex ante*, if rescission is granted, whether a court will order that a tender be made in an amount or in a sequence that deviates from the default rescission procedure that § 1635(b) sets forth.

may equitably alter after a borrower's notice of intent to rescind and, at the same time, require a lender to effect rescission immediately upon receiving such notice. Thus, because § 1635(b) provides a flexible set of procedures rather than an inflexible set of rules, a lender cannot violate § 1635(b) unless the lender fails to comply with the rescission procedure that a court has ordered.[20]

Finally, Bradford's understanding of § 1635(b) is textually foreclosed because any right to damages for a lender's failure to rescind necessarily depends on the TILA claimant's entitlement to rescission, which does not arise until either the lender or a court recognizes that the claimant is so entitled. As the Fourth Circuit held in *Shelton*, a borrower cannot "exercise[] his right to rescind" within the meaning of § 1635(b) until that right "is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." 486 F.3d at 821 (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–55 (1st Cir. 2002)). Until a judicial determination that a TILA claimant is entitled to rescission issues, the claimant has "only advanced a claim seeking rescission" if the lender denies that a rescission right exists. *Shelton*, 486 F.3d at 821 (quoting *Large*, 292 F.3d at 55). Put differently, notice of a borrower's intent to rescind does not automatically entitle the borrower to rescission, but instead merely begins "an on-going process consisting of a number of steps" by which it is determined (i) whether the right to rescission is available to the borrower, and if so, (ii) how that right will be enforced. *Yamamoto*, 329 F.3d at

---

[20] To conclude otherwise, namely, that a notice of intent to rescind obligates a lender to effect rescission, would short-circuit judicial management of rescission procedures by placing a heavy thumb on the scale against a lender who, while genuinely believing that a borrower is not entitled to rescission or will not make an adequate tender, is unwilling to resort to the judicial process out of fear of a damages award.

1173.[21] Because TILA claimants' entitlement to "damages under 15 U.S.C. § 1640 is . . . wholly dependent upon, and flows directly from, their entitlement to rescissory relief,"[22] any right to damages for a violation of § 1635(b) does not exist until a borrower has a right to rescission. Given this, it follows that as a textual matter, a lender cannot yet be obligated under § 1635(b) to rescind, because that the borrower has not yet "exercise[d] his right to rescind" merely by giving notice of intent to rescind to the lender. 15 U.S.C. § 1635(b).[23]

To recapitulate, the text and structure of § 1635(b) and the Fourth Circuit's decision in *Shelton* point persuasively to the conclusion that a borrower's notice to a lender of the borrower's intent to rescind does not, without more, trigger the lender's obligation to effect rescission.[24] This result serves TILA's purposes by ensuring that lenders are not required to grant—prematurely and without assurance of repayment—requests for rescission that appear dubious, while at the same time encouraging lenders presented with apparently meritorious rescission requests to act on those requests promptly.[25] Thus, a cause of action under § 1635(b) does not arise simply because a borrower has sent a lender such notice.

---

[21] *See also Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008) (characterizing rescission under § 1635(b) as "a *process* in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)") (emphasis added).

[22] *Smith*, 898 F.2d at 903.

[23] *See Horton*, 2011 WL 6130801, at *9 (reasoning that "[b]ecause Defendant here contested Plaintiffs' right to rescission, Plaintiffs have not yet 'rescinded' the transaction").

[24] To be sure, a different result may well obtain in the event that a lender fails to rescind after a court has determined that the borrower is entitled to rescission, or after the lender itself has concluded that the borrower is entitled to rescission. In this case, however, neither a lender nor a court has decided that Bradford is so entitled.

[25] In general, "[t]he purpose of the TILA disclosure requirement is to ensure that the consumer receives 'a meaningful disclosure of credit terms,' and is thus able to 'compare more readily the

**V.**

Because § 1635(b) does not trigger a lender's obligation to rescind simply by reason of

the lender's receipt of a borrower's notice of intent to rescind, it is plain that Bradford failed to

state a claim that any defendant violated § 1635(b) at any point.  At the time Bradford sent his

rescission request to HSBC, § 1635(b) did not require HSBC (the former noteholder and then-

current servicer)[26] or Ally (an assignee and the then-current noteholder)[27] to effect rescission

unilaterally or indeed to take any action in response to the notice.  Nor did service of the instant

action on HSBC, Ally, or RFC trigger an obligation under § 1635(b) to effect rescission

unilaterally.  Moreover, now that any right Bradford might have had to rescission has been

extinguished by the lapse of the statute of repose, § 1635(b) cannot impose any obligations on

any of these defendants.  *See Wolf v. Fed. Nat'l Mortg. Ass'n*, --- F. Supp. 2d. ----, 2011 WL

---

various credit terms available to him' as well as to 'avoid the uninformed use of credit.'"  *Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630, 632 (E.D. Va. 2000) (quoting 15 U.S.C. § 1601(a)).  The right of rescission merely effectuates this purpose and is not intended to give borrowers a "windfall" for a lender's violation of the statute, no matter how technical.  *Shelton*, 486 F.3d at 820.  In this sense, the prospect of liability for "penalties and attorney's fees" if a court grants rescission already provides a sufficiently strong incentive for "lenders to rescind mortgages when faced with valid requests without forcing debtors to resort to the courts," even absent "[t]he potential for damages."  *Belini*, 412 F.3d at 25.

[26] It is doubtful that HSBC could be liable in damages for a § 1635(b) violation because it no longer owned the Note and therefore lacked authority or power to render the security interest void.  *See Garcia v. Fannie Mae*, 794 F. Supp. 2d 1155, 1172 (D. Or. 2011) (holding that "when a consumer seeks rescission of a loan that has been assigned by the original lender to another holder, the court obviously cannot require the original lender to terminate a security interest that it no longer possesses, nor can the original lender grant rescission or cancel the loan") (citation and internal quotation marks omitted).

[27] It is worth noting that Ally could be liable in damages for a § 1635(b) violation only if, as is far from clear, notice to the original creditor constitutes constrictive notice to a subsequent assignee.  *See Miguel*, 309 F.3d at 1165 (holding that "no authority supports the proposition that notice to [the original lender] should suffice for notice to the [assignee]"); *but see Robbins v. Nationwide Advantage Mortg. Co.*, No. 10cv822, 2011 WL 6888573, at *5 (E.D. Wis. Dec. 30, 2011) (noting that "[a]t least three district courts within the Seventh Circuit have [concluded] that service of notice on the original lender was effective as to an assignee").

16

5881764, at *5 (W.D. Va. 2011) (observing that "it would be anomalous to give a plaintiff only three years to file a claim seeking to enforce a rescission request, but up to four years to seek damages based on such a request").[28]  In sum, Bradford's claim for wrongful refusal to effect rescission fails to state a valid claim as it is based on the false premise that a borrower's notice of intent to rescind *requires* a lender—in the absence of a court determination—to void the security and refund the borrower's payments.  Thus, dismissal of Bradford's § 1635(b) failure-to-rescind claim was proper,[29] and the motion to reconsider that dismissal must be denied.

An appropriate order will issue.

Alexandria, Virginia
March 5, 2012

/s/
T. S. Ellis, III
United States District Judge

---

[28] *See also Patterson v. Bank of Am.*, No. 11cv155, 2011 WL 1832814, at *2 (W.D. Wash. May 13, 2011) (holding that rescission does not occur in "a contested case" until after the borrower sues and concluding that a borrower's failure to bring suit within the three-year repose period required dismissal of wrongful failure to rescind claim).

[29] Dismissal of Bradford's claim for damages under § 1635(b) was also proper on the alternate ground that the facts alleged in the Third Verified Amended Complaint fail to raise a plausible inference that Bradford was capable of making a sufficient tender.  *See Haas v. Falmouth Fin., LLC*, 783 F. Supp. 2d 801, 806 (E.D. Va. 2011).  Moreover, it is unlikely that Bradford's notice of rescission was effective because it sought rescission of the entire refinancing transaction notwithstanding that, under TILA, "if a second loan from the same creditor exceeds the amount of the first loan, the borrower has the right to rescind only the difference between the two loans."  *See Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 763 (7th Cir. 2006) (citing 12 C.F.R. § 226.23(f)(2)).